IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COLEMAN DUPONT HOMSEY and ELLEN HOMSEY, | ) ) ) ) |
| Plaintiffs, | ) ) C.A. No. 07-338-JJF |
| v. | ) ) ) |
| VIGILANT INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
ITS PARTIAL MOTION TO DISMISS PLAINTIFFS'
COMPLAINT BASED UPON INSUFFICIENCY OF
<u>COUNT III (BAD FAITH) AND COUNT IV (CONSUMER FRAUD)</u>**

Denise Seastone Kraft (DE No. 2778)
EDWARDS ANGELL PALMER & DODGE LLP
919 North Market Street
Wilmington, DE  19801
Tel. 302-777-7770
Fax 888-325-9741

*Attorneys for Defendant
Vigilant Insurance Company*

July 6, 2007

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.     PLAINTIFFS' HAVE NOT SUCCESSFULLY PLED A CLAIM FOR
         BAD FAITH BREACH OF CONTRACT ............................................................ 2

    II.    PLAINTIFFS' CONSUMER FRAUD CLAIM MUST BE PLED WITH
         PARTICULARITY ................................................................................................ 6

CONCLUSION ......................................................................................................................... 12

i

# TABLE OF AUTHORITIES

**Cases**

Casson v. Nationwide Ins. Co.,
 455 A.2d 361, (Del. 1982) .................................................................................3

Crowhorn v. Nationwide Mutual Insurance Company,
 No. Civ.A. 00C-06-010WLW, 2002 WL 1767529,
 (Del. Super. Ct. July 10, 2002) ......................................................................9, 10

Dunlap v. State Farm Fire & Cas. Co.,
 No. Civ. A. 03C-12-168 PLA, 2004 WEL 1427001,
 (Del. Super. Ct. Jun. 15, 2004) ..........................................................................3

McDuffy v. Koval,
 226 F.Supp. 2d 541 (D. Del. 2002) .....................................................................3

Rinaldi v. Iomega Corporation,
 No. 98C-09-064-RRC, 1999 WL 1442014,
 (Del. Super. Ct. Sept. 3, 1999) ...................................................................8, 9, 10

State ex. rel. Brady v. Publishers Clearing House,
 787 A.2d 111 (Del. Ch. 2001) ..................................................................6, 7, 8, 10

Stephenson v. Capano Development, Inc.,
 462 A.2d 1069 (Del. 1983) .................................................................................6

**Statutes**

Consumer Fraud Act, 6 Del. C. § 2513 ....................................................................passim

Uniform Commercial Code, § 3-104 .........................................................................5 n.2

**Other Authorities**

Websters' New World College Dictionary 64 (4th ed. 2000) ..................................................5

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................passim

## INTRODUCTION

Plaintiffs' answering brief makes much ado about nothing when responding to Defendant's argument that Plaintiffs' Complaint[1] failed to adequately plead the requisite elements of a claim for bad faith breach of contract. Plaintiffs focus on Federal Rule of Civil Procedure 9(b)'s particularity requirement, when instead Defendant's argument hinges on the <u>elements</u> of a claim for bad faith breach of contract, not a particularized pleading requirement. What Plaintiffs have failed to do is adequately plead the <u>elements</u> of their claim of a bad faith breach of contract. Because of their failure to plead such a claim properly, Count III (Bad Faith) of the Complaint should be dismissed from the instant action.

Plaintiffs again miss the point in their argument concerning their consumer fraud claim. Again, Plaintiffs argue that Rule 9(b) does not apply. In this instance, however, Rule 9(b) most certainly does apply to Plaintiffs' consumer fraud claim. Plaintiffs cite to a Delaware Court of Chancery case that holds that the particularized pleading requirements of Rule 9(b) do not apply to "<u>enforcement actions brought by the Attorney General</u> to protect the consuming public." Plaintiffs' claim of consumer fraud, however, has been asserted by a private litigant, and therefore, the lower pleading standard set forth by the Court of Chancery does not apply here. Consequently, because Plaintiffs have not plead their consumer fraud claim with the requisite specificity, pursuant to Rule 9(b), Count IV (Consumer Fraud) should be dismissed from the instant action.

---

[1] All capitalized terms not defined herein are defined in the Memorandum of Law in Support of Defendant's Partial Motion to Dismiss Plaintiffs' Complaint Based Upon Insufficiency of Count III (Bad Faith) and Count IV (Consumer Fraud), D.I. 4.

1

## ARGUMENT

### I. PLAINTIFFS' HAVE NOT SUCCESSFULLY PLED A CLAIM FOR BAD FAITH BREACH OF CONTRACT

Plaintiffs' argument that Defendant has acted in bad faith lacks substance. Plaintiffs merely argue that because Defendant has a different interpretation from that of Plaintiffs of the terms of the Policy, Defendant has acted in bad faith in denying coverage for an amount it reasonably believes to fall outside the scope of the Policy. Such averments are not enough to state a claim for bad faith breach of contract.

Defendant never argues that a claim for bad faith breach of contract must be pled with specificity pursuant to Rule 9(b). Defendant only argues that Plaintiffs failed to allege every <u>element</u> of a claim for bad faith breach of contract. Plaintiffs confuse Defendant's argument regarding the consumer fraud claim (discussed below) with its argument concerning the bad faith claim. Defendant argues that Plaintiffs' consumer fraud claim must be pled pursuant to Rule 9(b), not Plaintiffs' bad faith claim.

Plaintiffs' cite to the <u>Desert Equities</u> decision in support of their proposition that claims for bad faith breach of contract need not be pled with particularity pursuant to Rule 9(b). Defendant does not disagree, and does not argue that Plaintiffs' bad faith claim must be plead pursuant to Rule 9(b). Defendant argues that every element of bad faith breach of contract must be alleged in order to state a claim upon which relief can be granted. Here, Plaintiffs fail to allege the element of bad faith. Plaintiffs merely state that the contract was breached in "bad faith," which is a conclusory statement. As set forth in Defendant's opening brief, such conclusory statements are not enough to plead a claim for bad faith breach of contract.

2

Put simply, Plaintiffs fail to allege that Defendant acted in bad faith. In order to act in bad faith, one must act "without reasonable justification." McDuffy v. Koval, 226 F.Supp. 2d 541 (D. Del. 2002). "In order to establish 'bad faith' the plaintiff must show that the insurer's refusal to honor its contractual obligations was <u>clearly without any reasonable justification</u>." <u>Dunlap v. State Farm Fire & Cas. Co.</u>, No. Civ. A. 03C-12-168 PLA, 2004 WEL 1427001, at * 8 (Del. Super. Ct. Jun. 15, 2004) (quoting <u>Casson v. Nationwide Ins. Co.</u>, 455 A.2d 361, 269 (Del. 1982)) (emphasis in original). The important question in determining if a denial of liability coverage constituted bad faith on the part of the issuer, is if there existed a set of facts or circumstances known to the insurer at the time of the denial of payment, which created a bona fide dispute, and therefore, a meritorious defense to the insurer's liability. <u>Id</u>. Defendant's interpretation of the Policy, and accompanying acts, were reasonable, if not expressly provided for under the Policy. The Policy provides, in relevant part:

> **Credit cards, forgery, and counterfeiting**
>
> We cover a person's legal obligations, up to <u>a total of</u> $10,000 for:
>
> - loss or theft of a credit or bank card issued to you or your family member, provided that all the terms for using the card are complied with;
>
> - loss caused by theft of a credit card number or bank card number issued to you or your family member when used electronically, including use on the Internet, provided that all the terms for using the card are complied with;
>
> - loss caused by forgery or alteration of any check or negotiable instrument; or

3

> - loss caused by accepting in good faith any counterfeit paper currency.
>
> We will defend a claim or suit against you or a family member for loss or theft of a credit card or bank card. We have the option to defend a claim or suit against you or a family member (or against a bank, with respect to this coverage) for forgery or counterfeiting.
>
> We may investigate, negotiate and settle any such claim or suit <u>at our discretion</u>. <u>Our obligation to defend ends when our payment for the loss equals $10,000</u>.
>
> In the event of a claim, the covered person shall comply with the duties described in Policy Terms, Property Conditions, Your duties after a loss and Policy Terms, Liability Conditions, Your Duties after a loss. In addition, the covered person shall notify the credit card service company or the issuing bank.
>
> This coverage does not apply to losses covered under Identity fraud.

(Compl. ¶10 (emphasis added).) Defendant paid Plaintiffs a total of $10,000, which is all Plaintiffs are entitled to under the terms of the Policy. The Policy clearly states, "[o]ur obligation to defend ends when our payment for the loss equals $10,000." (<u>Id.</u>) Even if, for argument's sake, this Court holds that the terms of the Policy require Defendant to pay up to $10,000 for <u>each</u> forged check, Defendant's interpretation of the Policy was not unreasonable, and thus not a bad faith act. Indeed, Defendant's interpretation was entirely reasonable, and certainly not "without any reasonable justification." Plaintiffs are hung up on the word "any" in the "Credit cards, forgery, and counterfeiting" provision of the Policy. Contrary to Plaintiffs' position, the word "any" has many meanings:

4

1. one, no matter which, of more than two [any pupil may answer]
2. some, no matter how much or how little, how many, or what kind [he can't tolerate any criticism]
3. without limit [entitled to any number of admissions]
4. even one; the least amount or number of [I haven't any dimes]
5. every [any child can do it]
6. of considerable size or extent [we won't be able to travel any distance before nightfall]

<u>Websters' New World College Dictionary</u> 64 (4th ed. 2000). Plaintiffs argue that the word "any" has one meaning and that it means "one." As listed above, the word "any" has several definitions and it even can mean "every." Therefore, it is reasonable to interpret the phrase, "[w]e cover a person's legal obligations, up to a total of $10,000 for ... loss caused by forgery or alteration of any check or negotiable instrument ... [o]ur obligation to defend ends when our payment for the loss equals $10,000[,]" to mean the total amount to be paid for "every" forged check is $10,000. The phrase "any check" in conjunction with the language "up to a total of $10,000" and "[o]ur obligation ... ends when or payment ... equals $10,000" reasonably can mean every check up to a cap of $10,000. It also reasonably can mean any type of check or negotiable instrument (i.e., personal check, cashier's check, traveler's check, etc.),[2] intending not to limit recovery of

---

[2] Uniform Commercial Code ("UCC"), § 3-104 (f) defines "Check" to mean:

> (i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check. An instrument may be a check even though it is described on its face by another term, such as "money order."

UCC § 3-104 (g)-(i) provide:

a particular type of check. For example, if the Policy limited recovery to personal checks, an insured could not recover for a forged Traveler's check. In sum, Defendant's payment of only $10,000 for losses incurred as a result of alleged forgery was reasonable. Plaintiffs' argument that it is unreasonable, without more, is a conclusory statement that is not enough to plead a claim for bad faith breach of contract. Defendant's interpretation of the Policy is not unreasonable and is not contrary to existing jurisprudence.

## II. PLAINTIFFS' CONSUMER FRAUD CLAIM MUST BE PLED WITH PARTICULARITY

Plaintiffs rely heavily on Stephenson v. Capano Development, Inc., 462 A.2d 1069 (Del. 1983) for the proposition that the elements of consumer fraud pursuant to the Consumer Fraud Act, 6 Del. C. § 2513 ("CFA") are entirely distinct from the elements of common law fraud or equitable fraud. Defendant does not quibble with such a proposition – it is settled Delaware law that such claims have different elements. The disagreement is whether a claim brought under the CFA must be pled according to the particularity requirements of Rule 9(b). Defendants submit that it must.

Plaintiffs cite to State ex. rel. Brady v. Publishers Clearing House, 787 A.2d 111 (Del. Ch. 2001) in support of their argument that consumer fraud need not be pled with

---

(g) "Cashier's check" means a draft with respect to which the drawer and drawee are the same bank or branches of the same bank.

(h) "Teller's check" means a draft drawn by a bank (i) on another bank, or (ii) payable at or through a bank.

(i) "Traveler's check" means an instrument that (i) is payable on demand, (ii) is drawn on or payable at or through a bank, (iii) is designated by the term "traveler's check" or by a substantially similar term, and (iv) requires, as a condition to payment, a countersignature by a person whose specimen signature appears on the instrument.

particularity pursuant to Rule 9(b). <u>Publishers Clearing House</u>, however, is distinguishable from the instant case. That case was an enforcement action brought by the State of Delaware Attorney General's Office, it was not a private lawsuit, like the one here. <u>State ex. rel. Brady v. Publishers Clearing House</u>, 787 A.2d 111 (Del. Ch. 2001). In <u>Publishers Clearing House</u>, the Court of Chancery held that "claims by the Attorney General brought under the [Consumer Fraud Act] ... are not sufficiently analogous to claims for common law fraud to justify the application of Rule 9(b)'s heightened pleading standard." 787 A.2d at 116. The court reasoned that

> the remedial goals of these two acts are inconsistent with the application of the particularized pleading requirements of Rule 9(b) <u>to enforcement actions brought by the Attorney General</u> to protect the consuming public. Certainly equity's original reluctance to upset legal judgments on grounds of fraud or mistake is irrelevant in such an action. Similarly, claims under the two acts do not involve charges of moral turpitude and are unlikely to be <u>brought by the State</u> for purposes of harassment.
>
> \*   \*   \*
>
> On the contrary, a requirement that <u>the State</u> plead with particularity the "who, what, where, and when" of each and every one of the 750,000 violations alleged would serve only to defeat the legislative <u>mandate to the Attorney General</u> in bringing actions such as these on behalf of the citizens of this State.

787 A.2d at 117 (emphasis added). The court, in <u>Publishers Clearing House</u>, recognized that other Delaware cases have applied Rule 9(b)'s heightened pleading standard to actions brought pursuant to the CFA, but disregarded those decisions because they failed to provide any "explicit analysis" on the issue. <u>Id.</u> at 115. That said, the Court of Chancery's decision in <u>Publishers Clearing House</u> conflicts with the case law from the

7

Delaware Superior Court on this issue. Neither the Delaware Supreme Court, nor the Delaware General Assembly have spoken directly on this issue. Therefore, this Court must predict how the Delaware Supreme Court would rule on this issue, if it were presented to that court. There is no rule that this Court must accept the holding of a Court of Chancery decision over that of a Superior Court decision. Indeed, this action was first filed in the Superior Court, not the Court of Chancery, as the Complaint does not sound in equity. Therefore, this Court should follow Superior Court precedent in deciding this issue and hold that Rule 9(b)'s heightened pleading standard applies. Even if this Court adopts the holding set forth in Publishers Clearing House, that holding only applies to enforcement actions brought by the Attorney General, not lawsuits brought by private litigants. Therefore, Rule 9(b) still would apply.

Because of the narrow holding of Publishers Clearing House and the differences between Court of Chancery Rule 9(b) and Superior Court Rule 9(b), Publishers Clearing House does not upset Superior Court precedent on this issue. In Rinaldi v. Iomega Corporation, the Delaware Superior Court held that a plaintiff alleging a claim pursuant to the CFA must do so with particularity in accordance with Rule 9(b). Rinaldi v. Iomega Corp., No. 98C-09-064-RRC, 1999 WL 1442014, at *7 (Del. Super. Ct. Sept. 3, 1999). In Rinaldi, the plaintiffs alleged a violation of the CFA by averring:

> 26. [the defendant] represented through advertising to the purchasing public that the [computer Zip] Drives were a suitable, reliable medium for the storage, archiving, transportation and retrieval of electronically stored data.
>
> 27. [the defendant] made this representation through its advertising, with the intention that the consuming public would rely on it in purchasing the [computer Zip] Drives.

8

> 28. The representation was false, in violation of 6 Del. C. § 2513.
>
> 29. As a result of the representation, the Plaintiffs and members of the Class purchased the [computer Zip] Drives and experienced [computer zip drive] failure, [computer Zip] Drive self-destruction, loss of data and damage to other personal property.

Id. The Superior Court held that the plaintiffs' averments were summary in nature and were insufficient to allege a claim for violation of the CFA. Id. at *8. Specifically, the court stated, "Plaintiffs failed to plead with particularity the time, place, and contents as required by Rule 9(b)." Id. The court further noted that

> Plaintiffs have only very generally alleged that Defendants made false representations through advertising and have <u>failed to describe with the particularity required what that advertising was, where it was placed and what it actually stated.</u> Furthermore, Plaintiffs have failed to identify a precise theory of fraud or false misrepresentation. Plaintiffs need to be more specific in alleging fraud by pleading with more particularity what the false advertising was, where it was located, the contents of the statements and the reliance that ensued from those statements which caused the damage.

Id. (emphasis added). Based on Rinaldi, it is clear that the Superior Court requires a claim brought under the CFA to be plead with particularity pursuant to Rule 9(b). In fact, according to Delaware law, as it currently stands, any claim brought by a private litigant pursuant to the CFA must be plead with specificity.

Similarly, in Crowhorn v. Nationwide Mutual Insurance Company, a decision that Plaintiffs cite in their answering brief, the Delaware Superior Court again found that a particularity requirement exists for claims brought pursuant to the CFA. Crowhorn v.

Nationwide Mut. Ins. Co., No. Civ.A. 00C-06-010WLW, 2002 WL 1767529, at *9 (Del. Super. Ct. July 10, 2002). The court, in Crowhorn, stated,

> Although the elements of a cause of action for consumer fraud under the CFA are significantly different than those elements of common law fraud, a particularity requirement still applies. The CFA "incorporates the principle that a negligent misrepresentation is sufficient to violate the statute," and for a misrepresentation to be negligent it must be *material*. A misrepresentation alone does not trigger liability. Where a plaintiff has not pled any particular harm or damage caused by allegedly negligent misrepresentations, the particularity requirements of Rule 9(b) have not been met because there has been no allegation of materiality.

Id. (underline emphasis added, italics in original). The court noted that there was a difference in the development and application of Court of Chancery Rule 9(b) and Superior Court Rule 9(b). In its notation, the court stated that Court of Chancery Rule 9(b) does not apply to a cause of action by the Attorney General brought under the CFA. Id. n. 59 (citing Publishers Clearing House). Again, as in the instant case, the Crowhorn case did not involve an enforcement action brought by the Attorney General.

The present action is far different than the action in Publishers Clearing House, and is more akin to the actions filed in Rinaldi and Crowhorn. Here, as in Rinaldi and Crowhorn, private litigants have initiated the action. In this case, Plaintiffs are seeking a declaratory judgment and seeking to recover compensatory and punitive damages for an alleged breach of contract, bad faith breach of contract and violation of the CFA. This is very different from an action pursued by the State to enforce the CFA, as articulated in the Publishers Clearing House decision.

In this action, Plaintiffs have averred the following in support of their consumer fraud claim:

> 67. The Policy contains Vigilant's promise of good faith and fair dealing in the handling of claims thereunder.
>
> 68. By selling and issuing the Policy, Vigilant promised to handle claims thereunder in good faith, and to deal fairly with Mr. and Mrs. Homsey.
>
> 69. By selling and issuing the Policy, Vigilant promised to provide "Credit card, forgery and counterfeiting" coverage consistent with the Policy's terms.
>
> 70. By engaging in the conduct alleged in paragraphs 31 through 49 above, Vigilant has created a condition of falsity in the promises it made in the course of the Policy's sale.
>
> 71. Vigilant's conduct, as alleged above, is in violation of 6 Del. C. § 2513.
>
> 72. As a direct result of Vigilant's violation of 6 Del. C. § 2513, plaintiffs' Coleman DuPont Homsey and Ellen Homsey have suffered and will suffer injury as heretofore alleged.

(Compl. ¶¶ 67-72.) These averments are not enough to meet the particular requirements set forth in Rule 9(b).

As stated in Defendant's Opening Brief, Plaintiffs fail to allege any facts to support the claim that "Vigilant has created a condition of falsity in the promises it made in the course of the Policy's sale." In fact, as discussed above, Defendant did not "provide 'credit card, forgery and counterfeiting' coverage consistent with the Policy's terms." Defendant never promised to provide unlimited financial recovery for forgery,

and it would be unreasonable for Plaintiffs to belief it did. Thus, the reason a $10,000 cap was included in the Policy.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Memorandum of Law in Support of Defendant's Partial Motion to Dismiss Plaintiffs' Complaint Based Upon Insufficiency of Count III (Bad Faith) and Count IV (Consumer Fraud), Counts III and IV of Plaintiffs' Complaint should be dismissed and Plaintiffs' requests for punitive damages stricken.

Dated: July 6, 2007                         EDWARDS ANGELL PALMER & DODGE LLP

                                            /s/ Denise Seastone Kraft
                                            Denise Seastone Kraft (DE No. 2778)
                                            919 North Market Street
                                            Wilmington, DE 19801
                                            (302) 425-7106
                                            (888) 325-9741 (fax)

                                            *Attorneys for Defendant*
                                            *Vigilant Insurance Company*

## CERTIFICATE OF SERVICE

I, Denise Seastone Kraft, hereby certify that on July 6, 2007, the attached **Defendant's Reply Brief in Support of Its Partial Motion to Dismiss Plaintiffs' Complaint Based Upon Insufficiency of Count III (Bad Faith) and Count IV (Consumer Fraud)** was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

John Sheehan Spadaro, Esq.
John Sheehan Spadaro, LLC
724 Yorklyn Road
Suite 375
Hockessin, DE 19707

                                                          */s/ Denise Seastone Kraft*
                                                          Denise Seastone Kraft (DE No. 2778)