```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE
```

COLEMAN DUPONT HOMSEY and       :
ELLEN HOMSEY,                   :
                                :
              Plaintiffs,       :
                                :
    v.                          :   Civil Action No. 07-338-JJF
                                :
VIGILANT INSURANCE COMPANY,     :
                                :
              Defendant.        :

John S. Spadaro, Esquire of JOHN SHEEHAN SPADARO, LLC, Hockessin, Delaware.

Attorney for Plaintiffs.

Denise Seastone Kraft, Esquire of EDWARDS ANGELL PALMER & DODGE LLP, Wilmington, Delaware.

Attorneys for Defendant.

**MEMORANDUM OPINION**

July 31, 2007
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is a Motion To Dismiss Plaintiffs' Complaint Based Upon Insufficiency Of Count III (Bad Faith) And Count IV (Consumer Fraud) (D.I. 3) filed by Defendant, Vigilant Insurance Company ("Vigilant"). For the reasons discussed, the Court will deny the Motion.

## BACKGROUND

The factual background relevant to this action is derived from the allegations of Plaintiffs' Complaint. According to Plaintiffs, Vigilant issued to Plaintiff, Coleman DuPont Homsey, an insurance policy identified as Chubb Masterpiece Policy No. 12680929-01 (the "Policy"). (Cmplt. at ¶ 6.) Plaintiff, Ellen Homsey, is a "covered person" under the Policy. (Id. at ¶ 7.) The Policy has been in effect at all times relevant to this action and includes, among its "extra coverages" for personal liability, coverage related to "credit cards, forgery, and counterfeiting." This coverage provision provides:

> **Credit cards, forgery, and counterfeiting.**
> We cover a covered person's legal obligation, up to a total of $10,000 for:
>
> - loss or theft of a credit or bank card issued to you or a family member, provided that all the terms for using the card are complied with;
>
> - loss caused by theft of a credit card number or bank card number issued to you or a family member when used electronically, including use on the Internet, provided that all the terms for using the card are complied with;

1

> - loss cause by forgery or alteration of any check or negotiable instrument; or
>
> - loss caused by accepting in good faith any counterfeit paper currency.
>
> We will defend a claim or suit against you or a family member for loss or theft of a credit card or bank card. We have the option to defend a claim or suit against you or a family member (or against a bank, with respect to this coverage) for forgery or counterfeiting.
>
> We may investigate, negotiate and settle any such claim or suit at our discretion. Our obligation to defend ends when our payment for the loss equals $10,000.
>
> In the event of a claim, the covered person shall comply with the duties described in Policy Terms, Property Conditions, Your duties after a loss and Policy Terms, Liability Conditions, Your Duties after a loss. In addition, the covered person shall notify the credit card service company or the issuing bank.
>
> This coverage does not apply to losses covered under Identity fraud.

(Id. at ¶ 10.) The Policy, including the above provision, was drafted by Vigilant without negotiation by Plaintiffs. (Id. at ¶¶ 23-25.)

By letter dated December 29, 2005, Plaintiffs tendered to Vigilant a claim for coverage under the credit card, forgery and counterfeiting provision arising from forged checks and stolen credit cards by Plaintiffs' ex-daughter-in-law. (Id. at ¶ 31.) According to Plaintiffs, their ex-daughter-in-law forged checks from their checking account during 2003 and 2004 in an amount exceeding $218,000. (Id. at ¶¶ 13-16.) Their ex-daughter-in-law also misappropriated their Wilmington Trust Visa and their AT&T

2

card resulting in losses exceeding $26,000 and $13,000 per card, respectively. (Id. at ¶¶ 17-19, 20-22.)

Plaintiffs contend that Vigilant did not communicate with them about their claim for four months, from January 2006 through April 2006. (Id. at ¶¶ 32, 34, 36, 38.) Plaintiffs also allege that Vigilant made no offer of payment to Plaintiffs on their claim for nearly a year. (Id. at ¶¶ 33, 35, 37, 39-46.)

On December 4, 2006, Vigilant tendered payment to Plaintiffs in the amount of $10,000 contending that this amount represents the "maximum payment" for credits cards, forgery and counterfeiting coverage under the Policy. (Id. at ¶ 47.) Plaintiffs contend that it took Vigilant an unreasonable amount of time to make this payment, and that the payment itself is unreasonable because it represents an unreasonable construction of the Policy language designed to minimize Vigilant's financial liability at the expense of Plaintiffs, who are innocent victims of losses that should be covered by the Policy. (Id. at ¶¶ 48-51.) Specifically, Plaintiffs contend that the Policy refers to coverage up to $10,000 caused by "forgery or alteration of any check." (Id. at ¶ 48) (emphasis added.) Plaintiffs contend that "any check" means any one check and that Vigilant's construction, which allows for a single $10,000 payment for an aggregate group of multiple checks, is unreasonable and contrary to the standard English usage of the word "any." (Id. at 48-49.)

Plaintiffs' Complaint contains four counts. Count I seeks a declaratory judgment that the Policy requires Vigilant to pay Plaintiffs up to a total of $10,000 for each forged check. (Id. at ¶¶ 52-57.) Count II alleges a claim for breach of contract. (Id. at ¶¶ 58-61.) Count III alleges a claim for bad faith breach of contract (id. at ¶¶ 62-65), and Count IV alleges a claim for consumer fraud. (Id. at ¶¶ 66-72.)

Vigilant has not filed an Answer to the Complaint, but instead has moved to dismiss Counts III and IV of the Complaint contending that Plaintiffs cannot state a claim for either bad faith or consumer fraud. (D.I. 3.) Specifically, Vigilant contends that Plaintiffs' Complaint acknowledges that there is a bona fide dispute concerning the Policy language, and therefore, Vigilant cannot have acted unreasonably in its construction. Vigilant also contends that Plaintiffs have failed to plead their consumer fraud claim with particularity. Thus, Vigilant requests dismissal of each of these claims, along with their related requests for punitive damages.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Although a complaint does not need detailed factual allegations, the plaintiff has an "obligation to provide the 'grounds' of his

4

'entitle[ment] to relief," and that obligation requires more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007). To state a claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965. Stated another way, heightened fact pleading is not required, but enough facts must be alleged to state a claim to relief that is plausible on its face. Id. at 1974. In addition, the Court is not required to accept legal conclusions alleged or inferred from the pleaded facts. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. The burden of demonstrating that dismissal is appropriate rests on the movant.

### DISCUSSION

I. <u>Whether Vigilant Is Entitled To Dismissal Of Plaintiffs' Bad Faith Breach Of Contract Claim (Count III)</u>

By its Motion, Vigilant contends that Plaintiffs' cannot state a claim for bad faith breach of contract. Vigilant contends that Plaintiffs have failed to allege any facts demonstrating that Vigilant denied or delayed payment without reasonable justification. Vigilant further contends that its construction of the disputed Policy provision is reasonable, and

that Plaintiffs acknowledge that a bona fide dispute exists between the parties concerning the construction. Vigilant contends that the existence of such a bona fide dispute negates the element of unreasonableness required to establish a bad faith claim.

Under Delaware law, a bad faith insurance claim "sounds in contract and arises from the implied covenant of good faith and fair dealing." Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 440 (2005) (citing Tackett v. State farm Fire & Cas. Co., 653 A.2d 254 (Del. 1995)). A bad faith breach of insurance claim requires the insurer to have failed in bad faith to investigate or process the claim or to have delayed in its payment obligation. Tackett, 653 A.2d at 264. Bad faith requires the insured to show that the insurer's denial of benefits was "clearly without any, reasonable justification." Id.

Reviewing the allegations of the Complaint in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have pleaded sufficient facts to plausibly state a bad faith breach of contract claim. Plaintiffs have pled the existence of a contract, and Vigilant has not sought to dismiss that count for any insufficiencies. Plaintiffs have further pled that Vigilant essentially ignored its claim for over a year, failing to make any payments until it issued its $10,000 check. Plaintiffs have further alleged that the construction used by Vigilant to support

6

the alleged unreasonably low payment was itself unreasonable in light of the plain and ordinary meaning of the word "any" as used in the Policy. Specifically, Plaintiffs allege:

> 47. By letter dated December 4, 2006 (nearly one full year after Mr. and Mrs. Homsey tendered to Vigilant their claim for coverage under the Policy's "Credit cards, forgery and counterfeiting coverage section) Vigilant tendered to Mr. Homsey the amount of $10,000, contending that this amount represents some "maximum payment" for "Credit cards, forgery and counterfeiting" coverage. Vigilant has thus failed and refused to pay Mr. and Mrs. Homsey the full value of their claim, and has instead adopted a construction of the "Credit cards, forgery, and counterfeiting" coverage section that is designed to minimize Vigilant's financial liability on the claim.
>
> 48. Vigilant's construction of the "Credit cards, forgery, and counterfeiting" coverage section <u>is particularly unreasonable as applied to Mr. and Mrs. Homsey's claim for loss caused by forgery.</u> That is, the Policy expressly promises coverage up to $10,000 for loss caused by "forgery or alteration of any check . . . ." The reference to "any check" means **any one check** or **any single check**. <u>As a matter of standard English usage, it does not permit Vigilant to limit coverage to $10,000 for an aggregated group of multiple checks.</u>
>
> 49. Vigilant's handling of Mr. and Mrs. Homsey's claim for "Credit cards, forgery, and counterfeiting" coverage has thus been wrongful in two fundamental respects: <u>first, by virtue of the appalling delays in which Vigilant has engaged; and second, by virtue of its refusal to adopt a reasonable construction of its own Policy language.</u>
>
> \* \* \*
>
> 63. By valuing Mr. and Mrs. Homsey's claim for "Credit cards, forgery, and counterfeiting" coverage at just $10,000, Vigilant has necessarily construed the reference to "any check" (within the "Credit cards, forgery, and counterfeiting" coverage section) to mean "all aggregated checks." <u>This is a willfully perverse</u>

7

> <u>and unreasonable construction, and contrary to the plain meaning of "any" as commonly understood by ordinary speakers of standard English (including small children).  For Vigilant to adopt such a construction as a means of avoiding its coverage obligations is willful, dishonest, and without reasonable justification.</u>

(Cmplt. at ¶¶ 47-49, 63) (underlined emphasis added, bold emphasis in original.)

Based on these allegations, Plaintiffs theory of bad faith is evident, at least by inference.  Plaintiffs contend that given the relatively small amount of funds ultimately remitted by Vigilant and the relatively uncomplicated theory supporting its basis for the payment, the delay in payment was unreasonable, as was the theory of construction used by Vigilant to support it. In the Court's view, these allegations are, in the circumstances of this case, sufficient to state a plausible claim for bad faith breach of contract.

The Court is also unpersuaded by Vigilant's argument that Plaintiffs' claim for declaratory judgment bars a claim for bad faith because it acknowledges a bona fide dispute over the Policy language.  That a bona fide or actual dispute exists does not necessarily mean that the dispute is a reasonable one particularly where, as here, Plaintiffs repeatedly aver that Vigilant's delay and interpretation of the Policy language was unreasonable and designed to minimize Vigilant's financial responsibility on the claim.  Accordingly, at this juncture, the

8

Court concludes that Plaintiffs have adequately pled a claim of bad faith breach of contract, and therefore, the Court will deny Vigilant's Motion To Dismiss Count III.

II. <u>Whether Vigilant Is Entitled To Dismissal Of Plaintiffs' Consumer Fraud Claim (Count IV)</u>

Vigilant next requests the Court to dismiss Plaintiffs' consumer fraud claim on the grounds that Plaintiffs failed to plead the claim with particularity as required by Federal Rule of Civil Procedure 9(b). Vigilant contends that there are no averments of the time, place, nature of or any other specific information relating to fraud, and that Plaintiffs' allegations of fraud are conclusory and without a factual basis. Vigilant also contends that Plaintiffs aver that the Policy was a contract of adhesion, and thus, Vigilant contends that Plaintiffs cannot establish that they relied on the misrepresentation of any fact or were otherwise falsely induced to enter into the contract.

In pertinent part, the Delaware Consumer Fraud Act ("DCFA") provides:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

6 Del. C. § 2513. This statute provides for a private cause of action against insurance companies. The Delaware Supreme Court

9

has interpreted this act consistently with common law definitions and principles related to fraud and deceit with the following three exceptions: "(1) 'a negligent misrepresentation is sufficient to violate the statute,' (2) a violation of the statute 'is committed regardless of actual reliance by the plaintiff,' and (3) the plaintiff need not show 'intent [by the defendant] to induce action or inaction by the plaintiff.'" Eames v. Nationwide Mut. Ins. Co., 412 F. Supp. 2d 431, 437 (D. Del. 2006) (Jordan, J.) (quoting Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1074 (Del. 1983)). In Eames, this Court previously concluded that claims under the DCFA must be pled with particularity under Rule 9(b). Although the Delaware Supreme Court has yet to address this issue, this conclusion is consistent with case law from the Delaware Superior Court. Crowhorn v. Nationwide Mut. Ins. Co., 2002 WL 1767529, *9 (Del. Super. Ct. July 10, 2002); Rinaldi v. Iomega Corp., 1999 WL 1442014, *7 (Del. Super. Ct. Sept. 3, 1999).

    Plaintiffs direct the Court to a decision by the Delaware Court of Chancery taking a different approach, State ex. rel. Brady v. Publishers Clearing House, 787 A.2d 111 (Del. Ch. 2001). In Publishers Clearing House, the Chancery Court concluded that the heightened pleading standard of Rule 9 did not apply to claims brought under the DCFA. However, Publishers Clearing House did not address private causes of action under the statute.

Rather, <u>Publishers Clearing House</u> specifically applied to actions brought by the Attorney General, and the Chancery Court recognized the distinction posed by such public enforcement actions in its rationale for declining to applying the Rule 9(b) particularity requirements. Specifically, the Chancery Court stated that:

> the remedial goals of these two acts are inconsistent with the application of the particularized pleading requirements of Rule 9(b) <u>to enforcement actions brought by the Attorney General to protect the consuming public.</u> Certainly equity's original reluctance to upset legal judgments on grounds of fraud or mistake is irrelevant in such an action. Similarly, claims under the two acts do not involve charges of moral turpitude and are unlikely to be brought by the State for purposes of harassment.
>
> * * *
>
> On the contrary, a requirement that the State plead with particularity the "who, what, where, and when" of each and every one of the 750,000 violations alleged <u>would serve only to defeat the legislative mandate to the Attorney General in bringing actions such as these on behalf of the citizens of this State</u>.

787 A.2d at 117 (emphasis added). In light of the Chancery Court's rationale, the Court is not persuaded that <u>Publishers Clearing House</u> should be applied to the private cause of action under the DCFA brought here. Moreover, this action was originally brought by Plaintiffs in the Delaware Superior Court and removed to this Court. Accordingly, consistent with <u>Eames</u> and the relevant Superior Court precedent applying to private causes of action under the DCFA, the Court concludes that the

11

heightened pleading requirements of Rule 9(b) apply to Plaintiffs' claim under the DCFA.

In Seville Indus. Machinery Corp. v. Southmost Machinery Corp., the Third Circuit explained that while date, place and time allegations may fulfill the pleading with particularity requirements, these types of allegations are not required to satisfy Rule 9, so long as the circumstances of the alleged fraud are plead sufficiently "to place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." 742 F.2d 786, 791 (3d Cir. 1984). The Court has reviewed the allegations of the Complaint in light of this standard and concludes that they are sufficient to satisfy the Rule 9(b) requirements.[1] Plaintiff have successfully pled a

---

[1] In support of their claim under the DCFA, Plaintiffs aver:

> 67. The Policy contains Vigilant's promise of good faith and fair dealing in the handling of claims thereunder.
>
> 68. By selling and issuing the Policy, Vigilant promised to handle claims thereunder in good faith, and to deal fairly with Mr. and Mrs. Homsey.
>
> 69. By selling and issuing the Policy, Vigilant promised to provide "Credit card, forgery and counterfeiting" coverage consistent with the Policy's terms.
>
> 70. By engaging in the conduct alleged in paragraphs 31 through 49 above, Vigilant has created a condition of falsity in the promises it made in the course of the

breach of the express promise to provide coverage under the Policy, as well as breaches of the implied promises of good faith and fair dealing. Plaintiffs have specified, within the meaning of Rule 9(b), the conduct giving rise to these alleged breaches which consists of both an alleged unreasonable delay in payment, as well as an alleged unreasonable construction of the Policy. The Court concludes that these allegations, which are the same allegations that underlie their claim for bad faith breach of contract, are also sufficient to plead a claim under the DCFA. Accordingly, at this juncture, the Court will deny Vigilant's Motion To Dismiss Count IV.

## CONCLUSION

For the reasons discussed, the Court will deny Vigilant's Motion To Dismiss Plaintiffs' Complaint Based Upon Insufficiency Of Count III (Bad Faith) And Count IV (Consumer Fraud).

An appropriate Order will be entered.

---

Policy's sale.

71. Vigilant's conduct, as alleged above, is in violation of 6 Del. C. § 2513.

72. As a direct result of Vigilant's violation of 6 Del. C. § 2513, plaintiffs' Coleman DuPont Homsey and Ellen Homsey have suffered and will suffer injury as heretofore alleged.