## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLEMAN DUPONT HOMSEY and<br>ELLEN HOMSEY, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 07-338JJF |
| v. | ) | |
| | ) | |
| VIGILANT INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### HOMSEY PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Plaintiffs Coleman DuPont Homsey and Ellen Homsey respectfully move, pursuant to

Fed. R. Civ. P. 26(c), for a protective order with respect to certain of Vigilant's initial

interrogatories and document requests.[1]

As shown below, Vigilant covered the Homseys' claim roughly one year ago. Since then,

it has pled repeatedly that it "fully paid Homsey (sic) on this claim in accordance with the

Policy." Yet it now seeks, through discovery, to go back in time and contest coverage for the

already-covered claim. Because Vigilant's discovery bears no relation to the claims and defenses

in this case, a protective order is needed.

1. In this consumer coverage case the Homseys proceed under a "Chubb Masterpiece

Policy" sold to them by Vigilant (a Chubb affiliate). They seek, among other relief, a declaration

that Vigilant must pay their legal obligations for losses caused by 1) thefts of certain credit cards

---

[1] The specific discovery items affected by this motion include Interrogatory Nos. 4(d)-(i), 5(d)-(i), 6(d)-(i), 12-16, 22, 23 and 25; and Document Request Nos. 3, 4 and 7. *See* Ex. A (Vigilant's discovery). The Homseys reserve all other objections not raised by this motion, and will assert them in their written responses as the responses become due.

and/or credit card numbers, up to a total of $10,000 for each such theft, and 2) the forging of certain checks, up to a total of $10,000 for each such check.

2. The dispute is thus clear: the issue is not *whether* the Homseys' claim is covered, but *to what extent* it is covered. It is a choice between a single $10,000 payment (under Vigilant's theory of the case), or multiple payments of up to $10,000 each (according to the Homseys). The Court readily grasped this, and framed the dispute accordingly in its July 31, 2007 Memorandum Opinion denying Vigilant's motion to dismiss:

> Specifically, Plaintiffs contend that the Policy refers to coverage up to $10,000 caused by "forgery or alteration of *any* check." Plaintiffs contend that "any check" means any *one* check and that Vigilant's construction, which allows for a single $10,000 payment for an aggregate group of multiple checks, is unreasonable and contrary to the standard English usage of the word "any."

D.I. 13 at 3 (emphasis in original).

3. Why is this so? That is, what makes this case a dispute on the extent (in dollars) of coverage, rather than the presence or absence of coverage in the first instance? The answer is twofold. *First*, by tendering its $10,000 payment nearly one year ago, Vigilant covered the claim. No authority exists under Delaware law that would allow an insurer to go back in time and contest coverage for claims it paid months or years earlier. Instead, courts universally hold that by covering a claim an insurer waives coverage defenses. *Second*, Vigilant has actually pled that the claim is covered. Coverage is thus admitted both in fact (by virtue of Vigilant's having tendered payment on the claim), and in law.

4. *The effect of Vigilant's tender of coverage.* There is no dispute that on December 4, 2006, Vigilant tendered payment of $10,000 to the Homseys, characterizing it as a "maximum payment" for the thefts and losses at issue. Ex. B. In tendering that payment, Vigilant reserved

no right to reverse its coverage decision or assert any coverage defenses whatever. *Id.* It simply covered the claim.

5. Though the issue seldom arises (since few insurers are brazen enough to raise it), courts hold that when an insurer provides coverage it waives coverage defenses. *See Ogden v. United States Fidelity and Guar. Co.*, 933 P.2d 1200, 1204 (Ariz. Ct. App. 1997) (insurer's failure to raise defenses at the time it provided coverage acts as a waiver of those defenses); *Apex Mut. Ins. Co. v. Christner*, 240 N.E.2d 742, 747 (Ill. Ct. App. 1968) ("It is well settled that assumption of the insured's defense constitutes a waiver by the insurer of all questions of policy coverage.") By covering the Homseys' claim Vigilant waived its right to contest coverage -- though not necessarily its right to contest the *extent* of coverage.

6. The Ninth Circuit's decision in *Travelers Indem. Co. of Illinois v. Ins. Co. of North America*, No. 98-56276, 2000 WL 278390 (9th Cir. March 14, 2000) ("*Travelers v. INA*") is instructive. There the insurer contributed toward settlement of the underlying claims, then balked at paying a proportionate share of the underlying defense costs. The Ninth Circuit held that equity required the insurer to pay for the defense. And why? Because as a matter of equity, payment of indemnity waives any right to contest other coverage issues:

> INA participated in a settlement in each of the three lawsuits, acknowledging that its policy covered the claims of property damage. Therefore, "equity overrides the terms of the insurance policies . . . ."

*Travelers v. INA*, 2000 WL 278390, at *3 (citation omitted) (Ex. C). But it could hardly be otherwise. To allow an insurer to raise after-the-fact coverage defenses for claims it has already covered makes no sense; it runs counter to established principles of waiver, estoppel, and equity, and would make it impossible for consumers to rely on any payment or other extension of coverage from any insurer.

7. Nor does Vigilant's approach make sense under Delaware law. That is, Delaware law holds that when an insurer denies coverage on one ground, it may not later litigate coverage on other grounds. The first such holding dates back to the Second World War:

> It is a reasonable doctrine that an insurer be required promptly to disclose its purpose if it intends to rest its defense on a technical ground, a default which neither alters the risk nor increases the liability; and if it asserts other grounds of defense . . . it must assume the risk of having its conduct construed as an abandonment of other less meritorious defenses.

*Nathan Miller, Inc. v. Northern Ins. Co. of New York*, 39 A.2d 23, 26 (Del. Super. Ct. 1944). More recently, Justice Ridgely of the Delaware Supreme Court (then President Judge Ridgely of the Superior Court) held that "*the law is clear in Delaware that if an insurer denies liability upon one ground, it may not later defend a suit upon another ground.*" *Thomas v. Harford Mut. Ins. Co.*, C.A. No. 01C-01-046HDR, hearing transcript at 3 (Del. Super. Ct. April 8, 2004) (emphasis added) (Ex. D).[2]

8. If Vigilant's position is sustained -- that is, if it is permitted to contest the existence of coverage nearly one year after covering the claim -- Delaware law will be reduced to nonsense: an insurer that (like Vigilant) tendered coverage with no reservation of rights would then be free

---

[2] This rule -- which may be termed the "no hindsight bases" rule -- is by no means unique to Delaware. Thus the North Dakota Supreme Court has stated that "[g]enerally an insurer which denies liability on specified grounds may not subsequently attempt to deny liability on different grounds . . . ." *D.E.M. v. Allickson*, 555 N.W.2d 596, 599-600 (N.D. 1996). Observing that "[t]he rule has been widely followed," the North Dakota high court collected *nineteen cases and commentaries* to the same effect. *Id.* at 599-600 (citations omitted). The highest courts of Alabama and Vermont have likewise embraced the rule. *Home Indem. Co. v. Reed Equip. Co., Inc.*, 381 So.2d 45, 50 (Ala. 1980) ("Where an insurer specifically disclaims liability because of one ground of forfeiture, it waives all other grounds of forfeiture which might have been stated but were not"); *Armstrong v. Hanover Ins. Co.*, 289 A.2d 669, 672 (Vt. 1972) (by specifying one defense to coverage, insurer waives others). *And see Continental Ins. Co. v. Beecham, Inc.*, 836 F. Supp. 1027, 1045 (D.N.J. 1993) ("An insurer that does not disclaim on a certain ground has no right to raise that ground in a declaratory action initiated to determine if there is coverage.")

to litigate any and all coverage defenses years after the fact; while a second insurer that timely denied coverage would be unable to raise many of the same coverage defenses under Delaware's "no hindsight bases" rule. Adding to the absurdity is the fact that even today, nearly *two years* after the claim was first tendered for coverage, Vigilant has still yet to communicate any basis for denying the Homseys' claim. *Cf. Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 447 (3d Cir. 2003) (insurer's eighteen-month delay in communicating coverage defenses estopped it from denying coverage); *Griggs v. Bertram*, 443 A.2d 163, 171 (N.J. 1982) (holding that "where, after timely notice, adequate opportunity to investigate a claim, and the knowledge of a basis for denying or questioning insurance coverage, the insurance carrier fails for an unreasonable time to inform the insured of a potential disclaimer, it is estopped from later denying coverage under the insurance policy . . . .")

9. Absent fraud -- which must be pled with particularity, and has never been pled by Vigilant here -- there is no going back. The claim has been covered, and it cannot properly be "uncovered" through the litigation process.

10. *The effect of the pleadings.* In its answer to the complaint, Vigilant repeatedly admits that the claim is covered under the Homseys' policy. At paragraph 55 Vigilant pleads that "Vigilant has fully paid Homsey on this claim." In the next paragraph it goes further, confirming that the payment was made in accordance with the terms of coverage: "Vigilant has fully paid Homsey on this claim *in accordance with the Policy*." In paragraph 57 Vigilant states again that it "has fully paid Homsey on this claim in accordance with the Policy." In its tenth affirmative defense it pleads that the Homseys' claims are barred because "they have been paid in full for any claimed losses." Ans. (D.I. 5) at 7, 9 (emphasis added). Having repeatedly pled that the Homseys' claim was covered "in accordance with the Policy," Vigilant cannot now contend that

the claim should never have been paid at all. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (citing *White v. Arco-Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983) and *Mull v. Ford Motor Co.*, 368 F.2d 713, 715 (2d Cir. 1966) for the proposition that "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.")

11. *The discovery.* Despite having covered the claim, and despite having pled that the claim was properly covered, Vigilant has served the Homseys with broad discovery aimed at undoing coverage. For example, Interrogatory No. 4(d) seeks a statement of "how each specific withdrawal [of funds] . . . was determined to be authorized or unauthorized[.]" Subpart (e) asks "what, if anything, you did about the alleged thefts and the dates on which such action was taken [.]" Ex. A at 8. None of these inquiries is relevant to the contract construction issues at the heart of this case, or even the bad faith claim that derives from those issues. Instead, each question is aimed at the issue of coverage itself -- an issue that was resolved long ago.

12. Vigilant will cite cases holding that coverage cannot be created through waiver or estoppel. But those cases are inapposite: the Homseys have no need to *create* coverage, because coverage has already been established by Vigilant itself -- first by covering the claim, and then by pleading that it was covered in accordance with the policy.

<div style="margin-left: 45%;">

Respectfully submitted,

/s/ John S. Spadaro
John S. Spadaro, No. 3155
John Sheehan Spadaro, LLC
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
(302)235-7745

</div>

November 5, 2007

<div style="margin-left: 45%;">

Attorney for plaintiffs Coleman
DuPont Homsey and Ellen Homsey

</div>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLEMAN DUPONT HOMSEY and ELLEN HOMSEY, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 07-338JJF |
| v. | ) ) | |
| VIGILANT INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following:

> Denise Seastone Kraft
> Edwards Angell Palmer & Dodge LLP
> 919 North Market Street
> Wilmington, DE 19801

In addition, I certify that the document itself was served by U.S. Mail at the address shown.

JOHN SHEEHAN SPADARO, LLC
/s/ John S. Spadaro
John S. Spadaro, No. 3155
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
(302)235-7745

Attorney for Coleman DuPont
Homsey and Ellen Homsey

November 5, 2007

.1600

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLEMAN DUPONT HOMSEY and ELLEN HOMSEY, | ) ) ) | C.A. No. 07-338 (JJF) |
| Plaintiffs, | ) ) | |
| v. | ) ) | NON-ARBITRATION CASE TRIAL BY JURY DEMANDED |
| VIGILANT INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION ADDRESSED TO THE PLAINTIFFS**

Pursuant to Fed R. Civ. Proc. Rule 26, 33 and 34, Defendant, Vigilant Insurance Company ('Vigilant"), hereby propounds the following Interrogatories and Requests for the Production of Documents to be answered and responded to by Plaintiffs, Coleman Dupont Homsey and Ellen Homsey, under oath. All responses must be served within 30 days after service of these interrogatories on counsel for Vigilant at the offices of Edwards Angell Palmer and Dodge LLP, 919 N. Market Street, Suite 1500, Wilmington, Delaware 19801.

In answering these Interrogatories and Production Requests please furnish all information available to you, including information in the possession of your attorneys, their investigators, or any person acting on your behalf, and not merely such information as is known of your own personal knowledge. If you cannot answer any part of these Interrogatories in full after exercising due diligence to secure the information requested,

so state and answer the remainder as fully as possible, stating whatever information or knowledge you have concerning the unanswered or partially answered portion.

These Interrogatories and Production Requests are to be considered to be continuing; you are requested to provide, by way of supplemental answers, such additional information as you or any person acting on your behalf may obtain, which will augment or modify your initial answers. Such supplementary responses are to be served upon the Defendant's counsel within thirty (30) days of the receipt of such information.

## I.     DEFINITIONS

1.     "You" or "your" means Plaintiffs, Coleman Dupont Homsey and Ellen Homsey, to whom these Interrogatories and Requests for Production are directed, including all present or former attorneys, and/or any other agents or representatives.

2.     The term "Defendant" as used hereinafter in these Interrogatories and Requests for Production shall mean Vigilant Insurance Company.

3.     "Document" means any and all written, recorded or graphic material (however produced or reproduced), tapes or other voice recordings, and all other tangible objects, including but not limited to booklets, brochures, pamphlets, circulars, notices, periodicals, papers, contracts, agreements, photographs, memoranda, messages, cancelled checks, cash receipts, analyses, reports, financial calculations and representations, invoices, calendars, correspondence, electronic mail, legal pleadings, telegrams, notes, working papers, drawings, schedules, tabulations and projections, data processing tapes, disks, cards and printouts and all drafts thereof.

4.    "Identity," "Identify," and/or "Identification" shall mean:

(a)    With respect to a natural person, to state the full name and present or last-known address and employment addresses and telephone numbers of each person, his/her present or last known title or position and business affiliation, and his/her title or position at the time or times relevant to these interrogatories.

(b)    With respect to a corporation, to state the corporation's full name, date and state of incorporation, the address of its principal office, the states or countries in which it has qualified to do business and the date of its qualification in each state or country and to further identify its officers and directors, and employees involved with the subject matter referred to in the interrogatory.

(c)    With respect to a person other than a natural person or corporation, to state its proper name or designation, its principal office address, and identify its managers, officers, directors and agents, and employees involved with the subject matter referred to in the interrogatory.

(d)    With respect to a document, whether or not the document is presently in existence, to state the date the document bears or bore, or, if undated, the date it was written;  the name and address of each person who wrote it or who participated in the writing of it; the name and address of each person to whom it was addressed and of each person to whom a copy was identified as being directed; the name and address of each person who received a copy of the document; a description of the document (e.g., letter, memorandum, etc.); a detailed summary of the contents of the document; the present location or custodian of each copy or if unknown, its last known location or custodian of each copy, and if the document is no longer in existence or is no

longer in your possession, custody or control, the disposition made of it, the reason or reasons for such disposition, and the date thereof. In lieu of providing the requested information about the identity of a document, to the extent that the document itself provides the requested information, you may attach the document to your answers to these Interrogatories, together with such explanatory matters as are necessary for a reasonable understanding of the matters set forth in each such document.

       (e)    With respect to a communication, to state the method of communication (personal conversation, telephone conversation, letter, telex, cable or otherwise), its date and time, the identity of the person(s) making and the person(s) receiving the communication; the identity of any documents relating to, referring to or embodying in any way the communication; and if the communication is not embodied in its entirety in a document; the verbatim contents of the communications, or if the verbatim contents of the communication cannot be recalled, a detailed summary of the communication.

       5.    "Describe" or "state with specificity" shall mean to set forth fully and clearly every fact and/or event (and not conclusions) of which you have knowledge relevant to the answer called for by the interrogatory.

       6.    "Statement" shall mean (A) a written statement in the handwriting of the person making it, or signed, or initialed, or otherwise in writing adopted or approved by the person making it; or (B) a stenographic, mechanical, electrical or other recording or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and which is contemporaneously recorded.

WLM_WLM_510510_2.DOC/DKRAFT

## II.    INSTRUCTIONS

In responding to these Interrogatories and Production Requests, please comply with the following instructions:

a.    In each question wherein you are asked to "identify" a person, state with respect to such person his or her (a) name, (b) last-known home address and telephone number, (c) last-known business address and telephone number, (d) last-known employer, together with said employer's address, and (e) said person's relationship to you.

b.    In each question wherein you are asked to "identify" any documents, state with respect to each such document:  (a) its date, (b) the person originating it, (c) its current location, (d) the person in whose possession or under whose control the document is and (e) the relationship of said person to you.

c.    If any document requested to be produced was, but is no longer, in your possession or control, or is no longer in existence state:

(1)    whether it is: (a) missing or lost, (b) destroyed, (c) transferred voluntarily or involuntarily to others and, if so, to whom, or (d) otherwise disposed of; and

(2)    with respect to each such document and disposition, (a) explain the circumstances surrounding an authorization for such disposition and the approximate date thereof, and (b) state any information available to you which might be helpful in locating originals or copies of the document in question.

d.    If you assert any privilege with respect to any document, with respect to each such document:  (1) identify it, (2) state the basis for the claim of privilege, (3)

describe fully the circumstance of the document's origin, and (4) describe fully the circumstances of the document's disposition, including identifying all persons whom you believe have or may have seen it or become acquainted with its contents.

e.    If a document was prepared in several copies, or additional copies were thereafter made, if any such copies are not or were not identical or are no longer identical by reason of subsequent notations or modification of any kind whatsoever, including, without limitation, notations on the front or back of any of the pages thereof, then each such nonidentical copy is a separate document and must be produced.

f.    Use of the singular shall be deemed to include the plural, the masculine to include the feminine and neuter, as appropriate in the context.

g.    If any document is withheld on a claim of privilege or work-product exemption, identify the document, and set forth a brief statement of the basis on which the privilege or exemption is claimed in accordance with the Federal Rules of Civil Procedure.

h.    These interrogatories and requests shall be of a continuing nature, so as to require additional answers if further information is obtained between the time answers are served and the time of trial.

### III.    INTERROGATORIES

1.    Please state the following for each Plaintiff:

(a)    your full name and any other names by which you have been known;

(b)    your date of birth;

(c)    your motor vehicle operator's license number;

WLM_WLM_510510_2.DOC/DKRAFT

     (d)     your social security number;

     (d)     your home address; and

     (e)     your business address.

RESPONSE:

     2.     Identify each person, not including you attorneys in this matter, who participated in or was consulted in answering these Interrogatories and, for each person, specify the Interrogatory answers for which the person was consulted and/or provided assistance.

RESPONSE:

     3.     Describe the alleged incident and the loss resulting therefrom, as identified in paragraph 2 of the Complaint.

RESPONSE:

     4.     With respect to paragraph 13 of the Complaint which states that "[s]pecifically, and on information and belief, their adult son's ex-wife forged multiple checks from the Checking Account, and presented them for payment during 2003 and 2004", please state:

     a.)     the name of your adult son;

     b.)     the name of your adult son's ex-wife;

     c.)     the date you determined that the alleged thefts had occurred;

d.)     identify in detail how each specific withdrawal identified by you was determined to be authorized or unauthorized;

e.)     what, if anything, you did about the alleged thefts and the dates on which such action was taken;

f.)     the date you notified Defendant about the alleged thefts and in what manner the notification was communicated;

g.)     whether Walter Homsey, Marcia Homsey or any other person was ever a signatory on the account, and if so, the period of time;

h.)     whether Walter Homsey, Marcia Homsey or any other person was ever authorized by you to withdraw money from the account, and if so, the period of time;

i.)     whether Walter Homsey ever authorized Marcia Homsey or any other person to withdraw money from the account, and if so, the period of time.

RESPONSE:


5.     With respect to paragraph 17 of the Complaint which states that "[s]pecifically, and on information and belief, their son's ex-wife misappropriated the Homseys' Wilmington Trust Visa card (and/or the corresponding credit card number) on multiple occasions during 2003, 2004 and 2005", please state:

a.)     the name of your adult son;

b.)     the name of your adult son's ex-wife;

WLM_WLM_510510_2.DOC/DKRAFT

c.)     when you determined that the alleged thefts had occurred;

d.)     Identify in detail how each specific charge identified by you was determined to be authorized or unauthorized;

e.)     what, if anything, you did about the alleged thefts and the dates on which such action was taken;

f.)     the date you notified Defendant about the alleged thefts and in what manner the notification was communicated;

g.)     whether Walter Homsey, Marcia Homsey or any other person was ever a signatory on the account, and if so, the period of time;

h.)     whether Walter Homsey, Marcia Homsey or any other person was ever authorized by you to use the credit card account to charge purchases, and if so, the period of time;

i.)     whether Walter Homsey ever authorized Marcia Homsey or any other person to use the credit card account to charge purchases, and if so, the period of time.

RESPONSE:


6.     With respect to paragraph 20 of the Complaint which states that "[s]pecifically, and on information and belief, their son's ex-wife misappropriated the Homseys' AT&T card (and/or the corresponding credit card number) on multiple occasions during 2004 and 2005", please state:

a.)     the name of your adult son;

b.)     the name of your adult son's ex-wife;

WLM_WLM_510510_2.DOC/DKRAFT

c.)    when you determined that the alleged thefts had occurred;

d.)    Identify in detail how each specific withdrawal or charge identified by you was determined to be authorized or unauthorized;

e.)    what, if anything, you did about the alleged thefts and the dates on which such action was taken;

f.)    the date you notified Defendant about the alleged thefts and in what manner the notification was communicated;

g.)    whether Walter Homsey, Marcia Homsey or any other person was ever a signatory on the account, and if so, the period of time;

h.)    whether Walter Homsey, Marcia Homsey or any other person was ever authorized by you to use the credit card account to charge purchases, and if so, the period of time;

i.)    whether Walter Homsey ever authorized Marcia Homsey or any other person to use the credit card account to charge purchases, and if so, the period of time.

RESPONSE:


7.    State the facts that Plaintiff relies upon to determine a "reasonable reading" under paragraph 30 of the Complaint.

RESPONSE:


8.    Identify every fact in detail that supports the allegation set forth in paragraph 48 of the Complaint, including all wording of the Policy specifically relied

10

upon, that "[a]s a matter of standard English usage, it does not permit Vigilant to limit coverage to $10,000 for an aggregated group of multiple checks."

RESPONSE:


9.     Identify every fact detail that supports your claim in paragraph 59 of the Complaint that Defendant has breached its contract with Plaintiff.

RESPONSE:


10.     Identify every fact in detail that supports your claim in paragraph 61 of the Complaint that "plaintiffs Coleman DuPont Homsey and Ellen Homsey have suffered economic loss" and set forth the exact amount of the economic loss.

RESPONSE:


11.     Identify every fact in detail that supports each and every allegation set forth in paragraph 71 of the Complaint that Defendant violated 6 Del. C. §2513

RESPONSE:


12.     State the name and address of each individual who had access to your Capital Advantage Checking Account, Wilmington Trust Visa credit card and AT&T Universal credit card accounts. Access includes all persons listed on the account or who had permission to use, access, make withdrawals, charges, or make deposits at any point over the life of the aforestated accounts.

RESPONSE:

WLM_WLM_510510_2.DOC/DKRAFT

13.    Describe the actions you took, if any, to prevent unauthorized access to the Capital Advantage Checking Account, Wilmington Trust Visa credit card and AT&T Universal credit card accounts:

a.) prior to the time of the incidents listed in the Complaint;

b.) during the time of the incidents listed in the Complaint,

RESPONSE:


14.    Describe the actions you took to prevent further unauthorized access to your financial accounts (including but not limited to the Capital Advantage Checking Account, Wilmington Trust Visa credit card and AT&T Universal credit card accounts) after discovering the incidents listed in the Complaint.

RESPONSE:


15.    Describe what actions were taken to recover the money allegedly removed without authorization or charged to the Capital Advantage Checking Account, Wilmington Trust Visa credit card and AT&T Universal credit card accounts, from the individual allegedly responsible for theft.

RESPONSE:


16.    If you made a report to the police regarding this incident, describe your actions and interaction with the police with respect to this incident from your initial contact through the present.

RESPONSE:

WLM_WLM_510510_2.DOC/DKRAFT

17.    If you have made any statements to any person regarding any of the events or happenings alleged in your Complaint, list the names and addresses of the persons to whom the statements were made.

RESPONSE:


18.    Identify all persons or entities known to you who have knowledge of the facts alleged in your Complaint, either through you communicating to them about the incident(s), or who personally observed or witnessed all or part of the incident(s).

RESPONSE:


19.    As to each person or entity named in response to Interrogatory 18, state whether to your knowledge, or to the knowledge of your attorney, representatives or agents, such person or entity has given any statement or statements concerning the subject matter of your Complaint or alleged injuries.  If your answer to this interrogatory is affirmative, please identify:

    (a)    the date on which said statement or statements were taken;

    (b)    the person or persons who took such statement or statements;

    (c)    the persons present when such statement or statements were taken;

    (d)    whether such statement or statements were written, made by recording device, or taken by court reporter or stenographer; and

    (e)    each person having custody or a copy or copies of such statement or statements.

WLM_WLM_510510_2.DOC/DKRAFT

RESPONSE:


20.     Identify all fact witnesses whom you intend to call at trial.

RESPONSE:


21.     Identify all experts whom you intend to call as an expert witness at trial and further state for each witness identified:

> (a)     the subject matter on which each expert witness is expected to testify;
>
> (b)     the substance of the facts and opinions to which each expert witness is expected to testify; and
>
> (c)     a summary of the grounds for each opinion of each expert witness expected to testify.

RESPONSE:


22.     State the exact dates of marriage of Walter Samuel Homsey to Marcia Homsey from inception to dissolution.  If such marriage was dissolved, state the Court that granted the dissolution.

RESPONSE:


23.     State the dates, and places Walter Samuel Homsey and Marcia Homsey lived together from January 1, 2003 to the present time.

RESPONSE:

24.    If you sought to negotiate any portion of the Policy with the Defendant prior to signing the Policy, identify the person you communicated with on the subject, the manner in which you negotiated and the date, time, and specific sections sought to be negotiated.

RESPONSE:

25.    The last know residential and business addresses and telephone numbers for the below persons:

    (a)    your son, Walter Homsey;

    (b)    your son's ex-wife, Marcia Boyer Homsey.

RESPONSE:

## IV.    REQUESTS FOR PRODUCTION

1.    Please provide all documents, correspondence, emails, memoranda and communications in any form relating to the alleged incidents listed in the Complaint involving the Capital Advantage Checking Account, Wilmington Trust Visa credit card and AT&T Universal credit card accounts.

RESPONSE:

2.    Please provide all reports and records made by the police based upon the alleged incidents listed in the Complaint involving the Capital Advantage Checking Account, Wilmington Trust Visa credit card and AT&T Universal credit card accounts.

RESPONSE:

WLM_WLM_510510_2.DOC/DKRAFT

3.    Please provide records relating to the opening of the Capital Advantage Checking Account, Wilmington Trust Visa credit card and AT&T Universal credit card accounts and authorized signatories on the accounts.

RESPONSE:

4.    Please provide communications and statements relating to the Capital Advantage Checking Account, Wilmington Trust Visa credit card and AT&T Universal credit card accounts for the past 5 years through the present time.

RESPONSE:

5.    Please provide a copy of any statements of any party or person concerning the subject matter of the Complaint.

RESPONSE:

6.    In reference to interrogatories propounded upon you by Defendant, please produce any and all documents or other materials that support any of your responses, upon which you relied when responding, or which in any way relate to any of your answers to interrogatories or to the subject matter thereof.

RESPONSE:

WLM_510510_2/DKRAFT

7.     Any local, state and/or federal tax returns for you showing deductions, credits or

other request for tax relief relating to the alleged thefts and losses that are the subject matter of

the Complaint.

RESPONSE:


EDWARDS ANGELL PALMER & DODGE LLP


Denise Seastone Kraft (#2778)
919 North Market Street, 15th Fl.
Wilmington, DE  19801
(302) 425-7106
(888) 325-9741 (fax)
   *Attorney for Defendant*
   *Vigilant Insurance Company*


Dated:  October 1, 2007

## CERTIFICATE OF SERVICE

I, Denise Seastone Kraft, hereby certify that on this 1st day of October, 2007, I caused

true and correct copies of *Defendant's First Set Of Interrogatories And Requests For*

*Production Addressed To The Plaintiffs* to be served on the following counsel of record in the

manner indicated:

### VIA FACSIMILE and U.S. FIRST-CLASS MAIL

John Sheehan Spadaro, Esq.
John Sheehan Spadaro, LLC
724 Yorklyn Road
Suite 375
Hockessin, DE  19707
Phone: (302) 235-7745
Fax:    (302) 235-2536

Denise Seastone Kraft (No. 2778)

# EXHIBIT B

 **CHUBB GROUP OF INSURANCE COMPANIES**

EASTERN CLAIM SERVICE CENTER

600 Independence Parkway
Chesapeake, Virginia 23320-5190
Phone: 800-252-4670    Facsimile: 757-222-4699

**Mailing Address:**
PO Box 4700
Chesapeake, VA 23327-4700

December 4, 2006

Murphy Spadaro & Landon
1011 Centre Road
Suite 210
Wilmington, DE 19805

RE:     Insured Name:     Coleman DuPont Homsey
        Policy Number:    1268092901
        Date of Loss:     10/01/04
        Cause of Loss:    Forgery Claim
        Company:          Vigilant Insurance Company

Dear Mr. Spadaro:

This letter is in reference to the above listed incident and to confirm that we received it in our office on January 5, 2006.

Enclosed please find a check in the amount of $10,000.00 which represents the maximum payment for Credit Cards, Forgery, and Counterfeiting claims under the Homsey's above referenced policy.

This policy offers coverage for Credit Cards, Forgery, and Counterfeiting.

Credit cards, forgery, and counterfeiting

We cover a covered person's legal obligation, up to a total of $10,000 for:

- loss or theft of a credit or bank card issued to you or a family member, provided that all the terms for using the card are complied with;

- loss caused by theft of a credit card number or bank card number issued to you or a family member when used electronically, including use on the Internet, provided that all the terms for using the card are complied with;

- loss caused by forgery or alteration of any check or negotiable instrument; or

- loss caused by accepting in good faith any counterfeit paper currency.

We will defend a claim or suit against you or a family member for loss or theft of a credit or bank card. We have the option to defend a claim or suit against you or a family member (or against a bank, with respect to this coverage) for forgery or counterfeiting.

We may investigate, negotiate, and settle any such claim or suit at our discretion. Our obligation to defend ends when our payment for the loss equals $10,000.

In the event of a claim, the covered person shall comply with the duties described in Policy Terms, Property Conditions, Your duties after a loss and Policy Terms, Liability Conditions, Your duties after a loss. In addition, the covered person shall notify the credit card service company or the issuing bank.

This coverage does not apply to losses covered under Identity fraud.

Personal Liability Coverage

We cover damages a covered person is legally obligated to pay for personal injury or property damage which takes place anytime during the policy period and are caused by an occurrence, unless stated otherwise or an exclusion applies. Exclusions to this coverage are described in Exclusions.

In lieu of the definition for "occurrence" in the Introduction, the following definition of "occurrence" applies:

"Occurrence" means an accident or offense to which this insurance applies and which begins within the policy period. Continuous or repeated exposure to substantially the same general conditions unless excluded is considered to be one occurrence.

If you have any questions, call me at 1-800-252-4670, extension 4118, between the hours of 8:00 am and 4:30 p.m.

Sincerely,

Christopher T. Evans
Identity Fraud Claims Examiner
757-222-4699 fax
ctevans@chubb.com

CHUBB GROUP OF INSURANCE COMPANIES
P.O. Box 4700
Chesapeake, VA  23227-4700

Page 1 of 1
Date of Loss: 10/01/2004
Policy: 001268092901
Occurrence: 000001
Insured: Coleman Homsey
Print Date: 12/4/06 10:00:01 AM



# Payment Summary

IssueDate: 12/04/2006
**Check Number:** 2860100
**SSN#/TIN#**

**Payee:** Coleman Homsey

| Date | Claimant | Description | Amount |
|------|----------|-------------|--------|
| | Coleman  Homsey | Credit Cards, Forgery & C | 10,000.00 |

ATTACHMENTS
Comments:

**Check Total:**    10,000.00

Claim Representative: CHRISTOPHER EVANS          Phone: (800)252-4670

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO VIEW. DO NOT CASH IF NOT PRESENT

**VIGILANT INSURANCE COMPANY**
P.O. Box 4700
Chesapeake, VA 23227-4700

2860100          60-160
12/4/06 10.          433

Claim Ref# 040505001668

Mellon Bank N. A.
PITTSBURGH, PA

PAY TO THE
ORDER OF: **Coleman Homsey**

THE SUM OF: **Ten Thousand and 00/100 Dollars**

**$******10,000.00**

IN SETTLEMENT OF: credit card, forgery, & counterfeiting claim

Coleman Homsey
466 Snuff Mill Ln
Hockessin, DE  19707-9643

**Authorized Signature**

⑆002860100⑆ ⑆043301601⑈ 006⑈6544⑆

# EXHIBIT C

Westlaw.

213 F.3d 643

213 F.3d 643, 2000 WL 278390 (C.A.9 (Cal.))
(Cite as: 213 F.3d 643)

C

Travelers Indemnity Co. of Illinois v. Insurance Company of North America

C.A.9 (Cal.),2000.

NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a " Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Ninth Circuit.
TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Plain tiff-counter-defendant-Appellee,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendantcounter-claimant-Appellant,
v.
THE HOMEOWNER'S WARRANTY COMPANY, Third-party-defendant-Appellee.
TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Plain tiff-counter-defendant-Appellant,
v.
ASSICURAZIONI GENERALI S.P.A.,
Cross-defendant-Appellee,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendantcounter-claimant-Appellee,
v.
THE HOMEOWNER'S WARRANTY COMPANY, Third-party-plaintiff-Appellee.
Nos. 98-56276, 98-56294.
D.C. Nos. CV-94-00317-RMB,
CV-94-00317-RMB (JFS).

Argued and Submitted Feb. 10, 2000.
Decided March 14, 2000.

Appeal from the United States District Court for the Southern District of California, Rudi M. Brewster, District Judge, Presiding.

Before BOOCHEVER, HAWKINS, and THOMAS , Circuit Judges.

MEMORANDUM

FN* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36-3.

*1 In this diversity action, Insurance Company of North America ("INA") appeals from the district court's grant of summary judgment to Travelers Indemnity Company ("Travelers"). INA appeals the district court's conclusion that INA owed Travelers contribution for a portion of the defense costs in three construction defect lawsuits. Travelers cross-appeals, claiming that the district court used the wrong formula to calculate the amount of costs owed by INA.

Leisure Technology, Inc. and two related corporations ("Leisure Technology") developed residential real estate in San Diego County. Leisure Technology was insured by three insurance companies: Travelers, INA, and Assicurazioni Generali SpA Insurance Company ("Generali"). The allegations of property damage in three construction defect lawsuits against Leisure Technology spanned the coverage periods of all three insurance companies' policies.

Travelers undertook the defense of Leisure Technology in all three actions; INA refused to defend. All three actions eventually settled, and in each case Travelers and INA contributed to the settlement.

Travelers filed suit in federal district court in 1994, seeking reimbursement of a share of the costs of defense from INA. In *Travelers Indemnity Co. v. Insurance Co. of North America,* 886 F.Supp. 1520, 1529 (S.D.Cal.1995), the court partially granted Travelers' motion for summary judgment against INA, requiring INA to "pay[ ] the same proportionate share of defense costs that it pays in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

213 F.3d 643

213 F.3d 643, 2000 WL 278390 (C.A.9 (Cal.))
(Cite as: 213 F.3d 643)

settlement or judgment .... so long as its reimbursement does not exceed the payment made by either Generali or Travelers."*Id.*

In November of 1997, Travelers and INA stipulated to the amounts that INA would owe in contribution to the defense costs in the three lawsuits under the district court's order. The district court entered judgment in favor of Travelers in June 1998, pursuant to the stipulation, ordering INA to pay $377,260.43 in defense costs plus prejudgment interest.

INA appeals.

## DISCUSSION

This court reviews the grant of summary judgment de novo. See*Pacific Employers Ins. Co. v. Domino's Pizza, Inc.,* 144 F.3d 1270, 1273 (9th Cir.1998). Because this is a diversity action, the law of the forum state, California, applies. See*Stanford Ranch, Inc. v. Maryland Cas. Co.,* 89 F.3d 618, 624 (9th Cir.1996).

### I. Obligation to contribute to defense costs

INA contends it was an excess insurer and that Travelers, as the primary insurer, must bear the entire cost of defense.
Under well-settled insurance principles, there are two levels of insurance coverage, primary and excess. Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability. "Excess" or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted.

**2** *Reliance Nat'l Indem. Co. v. General Star Indem. Co.,* 85 Cal.Rptr.2d 627, 634 (Ct.App.1999) (quotations, alterations and citations omitted). An excess insurer has no duty to defend until all the primary insurance has been exhausted, and generally demands a lower premium. See*id.* at 634, No.

638. "As a general rule, there is no contribution between a primary and an excess carrier," unless there is a specific agreement to the contrary. *Id.* at 635, 637.

The INA policy is technically "excess" because it provides that the insured must provide the first $100,000 in any settlement before the insurer's coverage or duty to contribute defense costs kicks in, making the $100,000 not a deductible but a "self-insurance retention." In California, "[i]t is well-recognized that self-insurance retentions are the equivalent to primary liability insurance, and that policies which are subject to self-insured retentions are 'excess policies' which have no duty to indemnify until the self-insured retention is exhausted."*Pacific Employers,* 144 F.3d at 1276-77 . If the amount of settlement does not exceed the amount of the self-insured retention-in this case $100,000-then the excess insurer has no duty to indemnify or to contribute to defense costs. See *General Star Indem. Co. v. Superior Court,* 55 Cal.Rptr.2d 322, 325 (Ct.App.1996) (when amount of settlement did not exhaust self-insurance retention, excess insurer had no duty to defend or contribute to defense costs).

The language of the INA policy clearly provides that INA has an obligation to contribute to defense costs when the amount of settlement exceeds the $100,000 retained limit, and so there is a specific provision in the contract overriding the general rule against contribution by excess insurers.

The district court acknowledged that because the insured did not incur the defense costs itself, but rather the costs were covered by Travelers, "[a]rguably, therefore, INA's obligation to reimburse defense costs is not technically triggered...."886 F. Supp at 1528. The court went on, however, to say that INA's obligation to reimburse required INA "to reimburse defense costs ... in the same proportion that INA contributed to settlement...."*Id.* at 1529.

The district court's reasoning is sound. Even though the defense costs were paid by another insurer, Travelers, INA has an equitable duty to contribute to the costs according to the formula set out in its policy.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

213 F.3d 643

213 F.3d 643, 2000 WL 278390 (C.A.9 (Cal.))
**(Cite as: 213 F.3d 643)**

Equitable contribution
is the right to recover, not from the party primarily
liable for the loss, but from a co-obligor who shares
such liability with the party seeking contribution.

....

[T]he reciprocal contribution rights of co-insurers
who insure the same risk are based on the equitable
principle that the burden of indemnifying or
defending the insured with whom each has
independently contracted should be borne by all the
insurance carriers together, with the loss equitably
distributed among those who share liability for it in
direct ratio to the proportion each insurer's coverage
bears to the total coverage provided by all the
insurance policies.

*3 *American Continental Ins. Co. v. American Cas.
Co,* 86 Cal.Rptr.2d 560, 563 (Ct.App.1999)
(citations and quotations omitted). Under California
law, the reciprocal rights of two insurers covering
the same risks "arise from principles of equity
rather than contract.... No specific rule governs this
area of the law. Courts should consider the nature of
the claim, the relation of the insured to the insurers,
the particulars of each policy and any other
equitable considerations."*Northern Ins. Co. v.
Allied Mut. Ins. Co.,* 955 F.2d 1353, 1360 (9th
Cir.1992) (citations and quotations omitted).

In this case, both Travelers and INA covered
Leisure Technology for property damage. Because
the damage occurred over the times covered by both
policies, there was consecutive coverage of the
same injury. INA's policy specifically provides that
it must contribute to defense costs after the retained
limit of $100,000 is exceeded, and INA's policy
also provides that bankruptcy of the insured will not
relieve INA of its obligation under the contract.
INA participated in the settlement in each of the
three lawsuits, acknowledging that its policy
covered the claims of property damage. Therefore, "
equity overrides the terms of the insurance policies,"
*Commerce & Indus. Ins. Co. v. Chubb Custom Ins.
Co.,* 89 Cal.Rptr.2d 415, 422 (Ct.App.1999)
(quotations omitted), and it should not be
determinative that INA's policy is designated as "
excess insurance," or that the defense cost clause in
the policy refers to the insured, although Travelers,
not the insured, paid the defense costs. We agree

with the district court that under principles of
equity, INA must contribute to the defense costs
incurred by Travelers.

*II. Amount of contribution due*

Travelers cross-appeals, claiming that the district
court applied the wrong contribution formula, and
should have required INA to contribute fully half of
Travelers' cost of defending Leisure Technology.

The amount of a contribution award is "well within
the trial court's equitable jurisdiction and discretion..
.. A trial court's determination of the correct
allocation to impose for purposes of contribution is
a matter of distributive justice and equity, not of
contractual specifics."*Fireman's Fund Ins. Co. v.
Maryland Cas. Co.,* 77 Cal.Rptr.2d 296, 314
(Ct.App.1998). We review the amount of the award
in this case for an abuse of discretion. See*Hoefler v.
Babbitt,* 139 F.3d 726, 727 (9th Cir.1998).

The district court held that under the terms of the
contract, "INA pays the same proportionate share of
defense costs that it pays in settlement or judgment."
886 F.Supp. at 1529. To the extent that this is an
interpretation of the contract, it is correct when the
other payor is the insured. The policy provides that
when Leisure Technology has paid its retained limit
of $100,000, defense costs "will be borne by the
insured and us in the same proportion as the
insured's and our respective obligations for payment
of the judgment or settlement."Under the policy, the
insured will not pay more than $100,000.

*4 The district court applied the same logic to a
settlement paid not by the insured and INA, but by
Travelers and INA: each party pays proportionate to
its obligation for payment of the settlement. The
result was a "conclu[sion] that INA has the duty to
reimburse defense costs in the ... actions in the same
proportion that it contributed to settlement so long
as its reimbursement does not exceed the payment
made by either Generali or Travelers."*Id.*

Travelers, however, claims the district court should
have compared INA's settlement amount not to the
total amount of settlement, but instead to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

213 F.3d 643

213 F.3d 643, 2000 WL 278390 (C.A.9 (Cal.))
**(Cite as: 213 F.3d 643)**

amount that would have been paid by Leisure Technology (no more than $100,000 in each case). That would drastically increase the amount owed by INA, which would be obligated to pay more than half of what Travelers is out of pocket for the defenses of the three actions. Travelers proposes another more "equitable" solution: INA should split the defense costs equally with Travelers (after Generali's contribution). That formula still would more than double the amount owed by INA.

Travelers' interpretation of the policy ignores that Leisure Technology, the insured, never paid $100,000, and ignores as well that other insurers participated in the defense and settlement of the claims against Leisure Technology. Equal division is not based on the contract, and Travelers does not explain how it is more equitable than the district court's proportional allocation.

The district court did not abuse its discretion.

AFFIRMED.

C.A.9 (Cal.),2000.
Travelers Indemnity Co. of Illinois v. Insurance Company of North America
213 F.3d 643, 2000 WL 278390 (C.A.9 (Cal.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

DUANE ADAM THOMAS,

        Plaintiff,

v.                        C.A. No. 01C-01-046

HARFORD MUTUAL INSURANCE
COMPANY and CONCENTRA
MANAGED CARE, INC.,

        Defendants.


BEFORE:   HONORABLE HENRY DUPONT RIDGELY, PJ.


APPEARANCES:

        JOHN SPADARO, ESQ.
        JONATHAN L. PARSHALL, ESQ.
        CHASE BROCKSTEDT, ESQ.
        MURPHY SPADARO & LANDON
           for the Plaintiff

        ANDREW F. SUSKO, ESQ.
        WESLEY PAYNE, ESQ.
        WHITE & WILLIAMS
           for the Defendant Harford

        JACQUELINE M. CAROLAN, ESQ.
        GREGORY WILLIAMS, ESQ.
        FOX ROTHSCHILD
           for the Defendant Concentra


        TRANSCRIPT OF JUDGE'S RULINGS
           APRIL 8, 2004

        JEANNE CAHILL, RMR, CRR
      SUPERIOR COURT OFFICIAL REPORTERS
   500 King Street - Wilmington, Delaware 19801
         (302) 255-0561

```
                                          April 8, 2004
                                          Courtroom No. 7
                                          9:40 a.m.

        PRESENT:

               As noted.

                              - - - - -



               (The following ruling relates to

        cross-motions for summary judgment.)

               THE COURT:  All right.  You may file your

        motion, and Mr. Susko, the defendants, of course,

        may respond.

               What I'd like you to include with your

        motion and any response is your proposed jury

        instruction regarding this statute.



                              *  *  *  *  *



               (The following ruling relates to possible

        objections to defendants' exhibit list.)

               MR. SPADARO:  We'll do our best to

        articulate as many objections as we can between now

        and Tuesday, but with the Court's permission, we'll

        reserve the right to raise other objections until,
```

1    my proposal is April 23.

2         Thank you, Your Honor.

3         THE COURT: All right. That extension is

4    granted as you have requested, Mr. Spadaro.

5

6                        * * * * *

7

8         (The following ruling relates to the motion

9    regarding "hindsight bases.")

10         THE COURT: Counsel, the law is clear in

11    Delaware that if an insurer denies liability upon

12    one ground, it may not later defend a suit upon

13    another ground.

14         In this case, I am going to order in limine

15    that there must be with regard to the pending IME

16    basis for denial of any preapproval, that there

17    must be a logical connection to the need for an

18    IME. And that can include the uncertainty of the

19    medical condition, and that can also include the

20    timing of the request.

21         And any other matter to which you seek to

22    offer evidence based upon a logical connection to

23    the need for the IME must be presented to the Court

out of the presence of the jury for my preapproval.

\* \* \* \* \*

(The following ruling relates to the motion to preclude testimony of Alyssa LeBel or Daubert hearing.)

THE COURT: All right. Counsel, based on the record before me, I do not find a basis to grant this motion and preclude Dr. LeBel from testifying at trial.

She, of course, must render -- Under Delaware law, for any opinion to be admissible, it must be to a reasonable degree of medical probability. And I presume it's unnecessary for me to exclude any opinion testimony by the plaintiff from her that is inconsistent with that ruling, but I will do so if necessary.

With regard to the need for a Daubert hearing, I'm not persuaded that there is a need for a Daubert hearing. However, I will allow, on request, at trial, voir dire out of the presence of the jury concerning whether any opinion which she

1    is about to offer is to a reasonable medical

2    probability.

3        The motion to preclude her from testifying

4    or in the alternative for a Daubert hearing is

5    denied.

6

7                    *  *  *  *  *

8

9        (The following ruling relates to motions

10   regarding judicial notice.)

11       THE COURT:  With regard to the judicial

12   notice of the statute, I do, of course, take

13   judicial notice of any existing law as enacted by

14   the General Assembly.  However, I do not find any

15   probative value in this case to Section 3002,

16   which, in itself, does not address the value of

17   early detection and prompt treatment.

18       While the synopsis may have addressed that,

19   the synopsis is not Delaware law.  It is

20   legislative history.

21       With regard to the decision of the Delaware

22   Supreme Court in Brown, dictum of the Supreme Court

23   is not law either.

1    In both cases, any probative value is

2    substantially outweighed by the danger of unfair

3    prejudice or confusion of the issues.  And the

4    defendants are deprived of the opportunity to

5    cross-examine any witness who led to the conclusion

6    in the synopsis.

7         Therefore, the motion of the defendants is

8    granted.

9         MR. PARSHALL:  Your Honor can I seek a point

10   of clarification?

11        THE COURT:  Yes.

12        MR. PARSHALL:  I understand that you've

13   ruled against us on the judicial notice question.

14   May we still use the materials to cross-examine

15   witnesses and examine our own witnesses?

16        THE COURT:  Is that the subject of the

17   motion as well?

18        MR. WILLIAMS:  Yes, Your Honor.

19        THE COURT:  If you attempt to do that, you

20   must first seek my permission out of the presence

21   of the jury because I do not find any probative

22   value of that, and you must demonstrate it to me

23   out of the jury's presence before I will allow it.

1

2                                    * * * * *

3

4              (The following ruling relates to the motion

5    regarding cumulative expert testimony.)

6              THE COURT:  All right.  Counsel, cumulative

7    and redundant expert testimony will not be allowed.

8    I accept the representation that it will not be

9    proffered.

10             The plaintiff's motion that I compel an

11   election between one of the two proffered experts

12   at this time is denied.

13             Any objection to cumulative testimony may be

14   raised if it is presented at the time of trial.

15

16                                    * * * * *

17

18             (The following ruling relates to limiting

19   Dr. Osterholm's opinion.)

20             THE COURT:  All right.  This would appear to

21   be an additional speaking motion, and I think that

22   in fairness to everyone, we should set it aside for

23   now and allow a fair opportunity to reflect on it.

1    And you may confer with Mr. Susko, and if

2    there is a basis for another motion in limine, you

3    may make it.

4    And Mr. Susko, you will have the opportunity

5    to respond.

6    MR. SUSKO:  Thank you, Your Honor.

7    MR. SPADARO:  Thank you, Your Honor.

8    THE COURT:  As well as Concentra.

9

10    * * * * *

11

12    (The following ruling relates to Matthew

13    Stachowiak and opening statements.)

14    THE COURT:  All right.

15    Counsel, at an opening statement, I will

16    allow an orientation as to the issues in the case.

17    However, I will not permit counsel to offer any

18    opinion of their own regarding the truthfulness or

19    untruthfulness of any testimony.

20    You may indicate what the evidence will

21    show.  That is the proper purpose of an opening

22    statement.  Given the representation that

23    plaintiff's counsel is not going to characterize,

1    himself, the deposition as sham testimony, I see no

2    basis to order anything more than you abide by the

3    rules of opening statement to not express argument

4    or personal opinion.  You may express what the

5    evidence will show.

6         With regard to the admissibility of the

7    testimony of Mr. Stachowiak in the deposition, the

8    objections which have been made are overruled.

9

10                  *  *  *  *  *

11

12         (The following ruling refers to the motion

13    for reconsideration of Commissioner Freud's order.)

14         THE COURT:  Counsel, with regard to this

15    particular issue, I believe it's appropriate and

16    warranted for me to review the transcript of the

17    April 1, 2004 hearing in the course of this

18    process.  And to expedite consideration of the

19    case, and the issues raised by the motion for

20    reconsideration, I'm also going to direct that the

21    documents at issue be submitted to me in camera

22    promptly, and I will reserve decision on this

23    particular motion.

* * * * *

1
2          THE COURT:  All right, let's leave it this

3    way.  First thing Monday morning, get the 40

4    documents to me in camera.

5

6                    * * * * *

7

8          (The following ruling refers to the motion

9    regarding attorney/client privilege.)

10         THE COURT:  I'll pass this motion regarding

11   Mr. Heckler's testimony.

12

13                   * * * * *

14

15         (The following ruling refers to Mr. Thomas

16   being wheelchair-bound.)

17         THE COURT:  All right.  The motion is mooted

18   based on those representations.

19

20                   * * * * *

21

22         (The following ruling relates to the motion

23   regarding Dr. Gelman's reputation.)

1   THE COURT:  All right.  Counsel, I am

2   persuaded based on the presentations today that the

3   probative value of Dr. Gelman's reputation is

4   substantially outweighed by the danger of confusion

5   of the issues or misleading of the jury or by

6   considerations of undue delay.

7       The Court -- This is not a trial without

8   Dr. Gelman, and I'm going to grant the motion and

9   order that there is to be no testimony proffered

10  regarding any reputation of Dr. Gelman without

11  leave of the Court first obtained out of the jury's

12  presence.  And what has been presented so far does

13  not justify that testimony of Mr. Weik.

14

15              *  *  *  *  *

16

17       (The following ruling relates to defendants'

18  motion to file cross-claims.)

19       THE COURT:  Counsel, I have considered your

20  respective positions, and I am satisfied that

21  Harford's motion for leave to file a cross-claim

22  should be granted.

23       Concerta's identical motion also is granted.



1    (Rulings concluded.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

STATE OF DELAWARE:

KENT COUNTY:


        I, Jeanne Cahill, Official Court Reporter of
the Superior Court, State of Delaware, do hereby
certify that the foregoing is an accurate
transcript of the proceedings had, as reported by
me in the Superior Court of the State of Delaware,
in and for Kent County, in the case therein stated,
as the same remains of record in the Office of the
Prothonotary at Dover, Delaware, and that I am
neither counsel nor kin to any party or participant
in said action nor interested in the outcome
thereof.

        WITNESS my hand this 10th day of April,
2004.



                    _____
                    Jeanne Cahill, RMR, CRR
                    Delaware CSR # 160-PS