IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLEMAN DUPONT HOMSEY and ELLEN HOMSEY, | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 07-338JJF |
| v. | ) ) | |
| VIGILANT INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

## HOMSEY PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF GENERIC TRAINING MATERIALS

Plaintiffs Coleman DuPont Homsey and Ellen Homsey respectfully move, pursuant to Fed. R. Civ. P. 33, 34 and 37, to compel disclosure by the defendant Vigilant Insurance Company of certain generic training materials. As shown below, such discovery is relevant to the claims and defenses in this case, and routinely permitted in coverage litigation generally.

1. The gist of the Homseys' claims is clear. They contend that Vigilant has unreasonably construed its policy language to artificially limit coverage for the Homseys' six-figure losses to just a single payment of $10,000. They contend, too, that Vigilant unreasonably delayed its investigation and payment of the claim. The Court has already recognized that these allegations state "a plausible claim for bad faith breach of contract":

> Based on these allegations, Plaintiffs theory of bad faith is evident, at least by inference. Plaintiffs contend that given the relatively small amount of funds ultimately remitted by Vigilant and the relatively uncomplicated theory supporting its basis for payment, the delay in payment was unreasonable, as was the theory of construction used by Vigilant to support it. In the Court's view, these allegations

are, in the circumstances of this case, sufficient to state a
plausible claim for bad faith breach of contract.

D.I. 13 at 8 (Court's July 31, 2007 Memorandum Opinion, denying Vigilant's motion to

dismiss).

3. ***The disputed discovery.*** Interrogatory Nos. 1 through 3 of our initial

interrogatories relate to generic training materials -- that is, training materials and claims-

handling guidelines that are not specific to any particular policyholder, claimant or claim.

Interrogatory No. 1 asks Vigilant whether, at any time since January 1, 2005, it has

provided any written or recorded "guidelines, instructions, standards or training

materials" to its employees with respect to the handling of claims under the "Chubb

Masterpiece" policy form (including without limitation claims for "Credit cards, forgery

and counterfeiting" coverage). Interrogatory No. 2 asks Vigilant to identify the persons

involved in the drafting of such training materials. Interrogatory No. 3 asks Vigilant to

identify documents referring to, relating to or constituting evidence of the subject matter

of its response to Interrogatory No. 1 -- an inquiry that would require Vigilant to identify,

at a minimum, the training materials themselves. *See* Ex. A (interrogatories).

4. Request Nos. 4 and 5 of our initial documents requests likewise seek discovery

of training materials. Request No. 4 seeks production of documents, audiotapes,

videotapes, etc., used by Vigilant since January 1, 2005 for the purpose of "training,

instructing or providing guidance to" its employees "in connection with the handling of

claims arising under any 'Chubb Masterpiece Policy' or similar insurance product

(including without limitation claims for 'Credit cards, forgery and counterfeiting'

coverage)." Request No. 5 seeks production of similar training materials with respect to

insurance claims generally.[1]  Ex. B (document requests).  Vigilant objected to these

interrogatories and document requests in their entirety, refusing to provide any responsive

documents or information whatever.  Vigilant's objections include overbreadth,

vagueness, relevance and confidentiality.  Ex. C.

    5.  ***Discovery of training materials is routinely permitted.***  Courts routinely

permit discovery of an insurer's generic training materials.  *See U.S. Fire Ins. Co. v.*

*Bunge North America, Inc.*, 224 F.R.D. 638, 646 (D. Kan. July 23, 2007) (upholding

Magistrate Judge's ruling compelling production of generic claims-handling materials,

district court finds that "even manuals for periods outside the time that [the insured's]

claims were handled could be relevant"); *Mariner's Cove Site B Assoc. v. Travelers*

*Indem. Co.*, No. 04-CIV-1913(KMW)(RLE), 2005 WL 1075400, slip op. at *1 (S.D.N.Y.

May 2, 2005) (collecting cases for the proposition that "claims manuals are relevant and

discoverable in actions to recover insurance reimbursement") (Ex. D); *Stonewall Ins. Co.*

*v. Nat'l Gypsum Co.*, No. 86-CIV-9671(SWK), 1988 WL 96159, slip op. at *3-5

(S.D.N.Y. Sept. 6, 1988) (upholding Magistrate's order compelling production of claims

manuals, district court  observes that "several decisions, within [the Second] Circuit and

without, have permitted such discovery") (Ex. E).[2]  The reason for this discovery is

---

[1] The January 1, 2005 "start date" was chosen to reflect the time frame during which
Vigilant handled the Homseys' claim.

[2] Delaware courts likewise permit discovery of training materials. *Crowhorn v.*
*Nationwide Mut. Ins. Co.*, C.A. No. 00C-06-010WLW, 2002 WL 31478806, slip op. at
*1 (Del. Super. Ct. Sept. 24, 2002) (upholding Commissioner's finding that "training
documents" are discoverable) (Ex. F); *Kemper Ins. Co. v. Soligo*, C.A. No. 95C-08-
266WTQ, 1996 WL 944919, slip op. at *1 (Del. Super. Ct. May 9, 1996) (ordering
insurer "to produce the entire claims manual") (Ex. G); *Hoechst v. National Union Fire*
*Ins. Co. of Pittsburgh*, 623 A.2d 1099, 1107 (Del. Super. Ct. 1991) (compelling
production of claims-related guidelines).

compelling: it allows for direct comparison of what the insurer did to what it should have done. In this case, for example, it may shed valuable light on the (one-year) duration of Vigilant's investigation of the Homseys' consumer coverage claim. To deny such discovery would be like excluding OSHA standards from a workplace accident case.

6. Vigilant's objections, meanwhile, are not well taken. To support its claim of burden, Vigilant should have made a particularized showing of the time, expense and logistical difficulties (if any) of producing its training materials. Since Vigilant has failed to do this, it has waived the objection. *See, e.g., Thompson v. U.S. Dept. of Housing and Urban Development*, 219 F.R.D. 93, 98 (D. Md. 2003) (collecting cases for the proposition that "a party that objects to discovery requests on the grounds of burden or expense has an affirmative duty to particularize the basis of the objections," and that "failing to do so waives the objection.") Nor is confidentiality a concern: if Vigilant's training materials truly constituted trade secrets (which they manifestly do not), they could be protected under the existing confidentiality order, found at D.I. 22 (and "So Ordered" at D.I. 23).

WHEREFORE, the Homsey plaintiffs' respectfully request that Vigilant be compelled to answer Interrogatory Nos. 1 through 3 and Document Request Nos. 4 and 5.

Respectfully submitted,

/s/ John S. Spadaro
John S. Spadaro, No. 3155
John Sheehan Spadaro, LLC
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
(302)235-7745

November 13, 2007

Attorney for plaintiffs Coleman
DuPont Homsey and Ellen Homsey

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

COLEMAN DUPONT HOMSEY and )
ELLEN HOMSEY, )
 )
              Plaintiffs, )
 )     C.A. No. 07-338JJF
 )
v. )
 )
VIGILANT INSURANCE COMPANY, )
 )
              Defendant. )

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following:

    Denise Seastone Kraft
    Edwards Angell Palmer & Dodge LLP
    919 North Market Street
    Wilmington, DE 19801

In addition, I certify that the document itself was served by U.S. Mail at the address

shown.

                        JOHN SHEEHAN SPADARO, LLC
                        /s/ John S. Spadaro
                        John S. Spadaro, No. 3155
                        724 Yorklyn Road, Suite 375
                        Hockessin, DE 19707
                        (302)235-7745

                        Attorney for Coleman DuPont
November 13, 2007              Homsey and Ellen Homsey

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLEMAN DUPONT HOMSEY and ELLEN HOMSEY, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 07-338JJF |
| v. | ) ) | |
| VIGILANT INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

## HOMSEY PLAINTIFFS' FIRST
## SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, plaintiffs Coleman DuPont Homsey and Ellen Homsey propound the following written interrogatories to be answered by defendant Vigilant Insurance Company separately and fully in writing under oath, furnishing all such information as is available to defendant in response thereto (with defendant to furnish any additional information that it hereafter acquires as soon as it is acquired):

### Definitions

1. References to "you", "your" or "Vigilant" are to the defendant Vigilant Insurance Company.

2. The term "identify", when applied to documents, means to disclose the date, description or title, author(s), recipient(s), copyee(s) and subject matter(s) of that document.

3. The term "identify", when applied to persons, means to disclose the name, present or last known address, present or last known employer and present or last known

job title or job description of that person.

### Interrogatories

1. At any time since January 1, 2005, has Vigilant  provided or presented any written or recorded guidelines, instructions, standards or training materials to its employees, agents or other representatives with respect to the handling of claims under so-called "Chubb Masterpiece" policies (including without limitation claims for "Credit cards, forgery and counterfeiting" coverage)?

2. With respect to your response to Interrogatory No. 1 above, identify all persons involved in the drafting, preparation or creation of the guidelines, instructions, standards or training materials to which that interrogatory refers.

3. With respect to your response to Interrogatory No. 1 above, identify all documents that refer to, relate to or constitute evidence of the subject matter of your response to that interrogatory.

4. With respect to any documents responsive to the Homseys' First Set of Requests for Production of Documents, but withheld by you under claim of privilege or protection:

    a. Identify each such document;

    b. Describe each such document by type or title;

    c. State the date of each such document;

    d. Identify all authors, recipients and copyees of each such document;

    e. Describe in detail the subject matter of each such document; and

    f. Identify the precise privilege or protection you claim for each such document.

2

Respectfully submitted,

/s/ John S. Spadaro
John S. Spadaro, No. 3155
John Sheehan Spadaro, LLC
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
(302)235-7745

July 19, 2007

Attorney for plaintiffs Coleman DuPont
Homsey and Ellen Homsey

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COLEMAN DUPONT HOMSEY and )
ELLEN HOMSEY, )
         )
              Plaintiffs, )
         )      C.A. No. 07-338JJF
v. )
         )
VIGILANT INSURANCE COMPANY, )
         )
              Defendant. )

## NOTICE OF SERVICE

I hereby certify that on this date, I electronically filed this Notice of Service with respect to the Homsey Plaintiffs' First Set of Interrogatories with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following:

Denise Seastone Kraft
Edwards Angell Palmer & Dodge LLP
919 North Market Street
Wilmington, DE 19801

In addition, I certify that the document itself was served by FedEx at the address shown.

JOHN SHEEHAN SPADARO, LLC
/s/ John S. Spadaro
John S. Spadaro, No. 3155
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
(302)235-7745

Attorney for Coleman DuPont
Homsey and Ellen Homsey

July 19, 2007

1462

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COLEMAN DUPONT HOMSEY and       )
ELLEN HOMSEY,                   )
                                )
            Plaintiffs,         )
                                )       C.A. No. 07-338JJF
v.                              )
                                )
VIGILANT INSURANCE COMPANY,     )
                                )
            Defendant.          )

## HOMSEY PLAINTIFFS' FIRST SET
## OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 34, plaintiffs Coleman DuPont Homsey and

Ellen Homsey request that defendant Vigilant Insurance Company produce for examination and

copying at the office of the Homseys' attorney, and in the time prescribed by that Rule, the

following items:

### Definitions

1. References to "you", "your" or "Vigilant" are to the defendant Vigilant Insurance

Company.

2. References to the "Policy" are to "Chubb Masterpiece Policy" no. 12680929-01 (being

the insurance contract at issue herein).

3. References to the "Claims" are to the Homseys' claims for "Credit cards, forgery and

counterfeiting" coverage, as more fully described in the complaint herein.

## Requests

1. The Policy.

2. All documents that refer or relate to the Claims.

3. All documents that refer to, relate to or constitute evidence of Vigilant's processing, handling or evaluation of the Claims.

4. All writings, audiotapes, videotapes or other documents or tangible things (including without limitation claims manuals) used by you from January 1, 2005 through the present for the purpose of training, instructing or providing guidance to your employees, agents or other representatives in connection with the handling of claims arising under any "Chubb Masterpiece Policy" or similar insurance product (including without limitation claims for "Credit cards, forgery and counterfeiting" coverage).

5. All writings, audiotapes, videotapes or other documents or tangible things (including without limitation claims manuals) used by you from January 1, 2005 through the present for the purpose of training, instructing or providing guidance to your employees, agents or other representatives in connection with the handling of insurance claims generally.

6. All documents (other than documents relating to any particular claimant or insured) that refer or relate to the meaning, purpose, construction or effect of the "Credit cards, forgery and counterfeiting" coverage provision that appears within the Policy.

7. All documents (other than documents relating to any particular claimant or insured) that refer or relate to the drafting, preparation or creation of the "Credit cards, forgery and counterfeiting" coverage provision that appears within the Policy

8. All personnel files or records for those of Vigilant's employees, agents or other representatives who were involved at any time prior to April 20, 2007 in processing, handling or

evaluating the Claims (limited, however, to that part of the responsive personnel files or records that refer or relate to the subject's performance of job duties consisting of or involving the processing, handling or evaluation of insurance claims).

9.  Your most recent audited financial statement.

10.  Your most recent annual report.

10.  All writings, audiotapes, videotapes or other documents identified in your responses to the Homseys' First Set of Interrogatories, served simultaneously herewith.

Respectfully submitted,

/s/ John S. Spadaro
John S. Spadaro, No. 3155
John Sheehan Spadaro, LLC
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
(302)235-7745

July 19, 2007                                  Attorney for plaintiffs Coleman DuPont
                                               Homsey and Ellen Homsey

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COLEMAN DUPONT HOMSEY and<br>ELLEN HOMSEY,<br><br>              Plaintiffs,<br><br>v.<br><br>VIGILANT INSURANCE COMPANY,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)    C.A. No. 07-338JJF<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF SERVICE

I hereby certify that on this date, I electronically filed this Notice of Service with respect to the Homsey Plaintiffs' First Set of Requests for Production of Documents with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following:

Denise Seastone Kraft
Edwards Angell Palmer & Dodge LLP
919 North Market Street
Wilmington, DE 19801

In addition, I certify that the document itself was served by FedEx at the address shown.

> JOHN SHEEHAN SPADARO, LLC
> /s/ John S. Spadaro
> John S. Spadaro, No. 3155
> 724 Yorklyn Road, Suite 375
> Hockessin, DE 19707
> (302)235-7745
>
> Attorney for Coleman DuPont
> Homsey and Ellen Homsey

July 19, 2007

1463

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COLEMAN DUPONT HOMSEY and<br>ELLEN HOMSEY,<br><br>        Plaintiffs,<br><br>v.<br><br>VIGILANT INSURANCE COMPANY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)   C.A. No. 07-338JJF<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' FIRST SET OF
## INTERROGATORIES AND REQUEST FOR PRODUCTION

Pursuant to *Fed. R. Civ. P.* 26, 33 and 34, defendant Vigilant Insurance Company

("Defendant"), through its undersigned counsel, hereby provides the following responses and

asserts the following objections to the interrogatories and requests for production served by

Plaintiffs Coleman Dupont Homsey and Ellen Homsey (collectively, "Plaintiffs").

## GENERAL OBJECTIONS

Defendant makes the following General Objections to Plaintiffs' First Set of

Interrogatories and Request For Production. These General Objections are incorporated by

reference into Defendant's response to each and every individual interrogatory and request for

production, to the extent applicable, whether or not specifically stated in each individual

response. Responses to Plaintiffs' interrogatories and request for production are qualified by the

objections, whether General or Specific, asserted herein. Answers to Plaintiffs' interrogatories

and requests for production do not waive any objections asserted.

    1.    Defendant objects to any interrogatory or request for production to the extent that

it seeks information which is not reasonably calculated to lead to the discovery of admissible

evidence, and is therefore irrelevant to the disposition of this action.

2.    Defendant objects to any interrogatory or request for production to the extent that it seeks information already within Plaintiff's possession, knowledge or control.

3.    Defendant objects to any interrogatory or request for production to the extent that it seeks the disclosure of sensitive or confidential information, which may be subject to an applicable privilege, rule of confidentiality or protective order.

4.    Defendant objects to any interrogatory or request for production to the extent that it seeks it seeks information protected by the attorney-client privilege or attorney work-product doctrine or any other applicable privilege.

5.    Defendant objects to any interrogatory or request for production to the extent that it is premature and/or seeks information or documents that are at this point inaccessible or yet to be discovered.

6.    Defendant objects to any interrogatory or request for production to the extent that it seeks information or documents that are unreasonably cumulative or duplicative, or information or documents as easily obtainable by Plaintiff from another, more convenient, less burdensome and/or less expensive source.

7.    Defendant objects to any interrogatory or request for production to the extent that it seeks information or documents that no longer exist.

8.    Defendant objects to any interrogatory or request for production to the extent that it is vague and/or ambiguous.

9.    Defendant objects to any interrogatory or request for production to the extent that it does not identify the information sought with reasonable particularity.

WLM_510202_1.DOC/DKRAFT

10.    Defendant objects to any interrogatory or request for production as overbroad and unduly burdensome to the extent that it is not limited in time and/or seeks information beyond the relevant time period involved in this action.

11.    Defendant objects to any interrogatory or request for production as overbroad and unduly burdensome to the extent that it seeks information concerning policyholders other than Plaintiffs, claims other than those at issue in this action, policies other than those referenced in Plaintiff's Complaint, or policy language other than that contained in the policy referenced in the Complaint. Defendant has limited its answers to information pertaining to the allegations contained in Defendant's policy referenced in Plaintiff's Complaint.

12.    Defendant objects to any interrogatory or request for production to the extent that it seeks discovery of trade secrets or otherwise confidential and/or proprietary business information.

13.    Defendant objects to any interrogatory or request for production to the extent that it requires Defendant to exceed its obligations under the *Federal Rules of Civil Procedure* and the *Local Rules of the United States District Court for the District of Delaware*.

WLM_510202_1.DOC/DKRAFT

## INTERROGATORIES

1.      At any time since January 1, 2005, has Vigilant provided or presented any written or recorded guidelines, instructions, standards or training materials to its employees, agents or other representatives with respect to the handling of claims under so-called "Chubb Masterpiece" policies (including without limitation claims for "Credit cards, forgery and counterfeiting" coverage)?

**OBJECTION:**

Defendant objects to this interrogatory on the grounds that it is overbroad and unduly

burdensome in that it seeks information beyond the relevant time period involved in this action.

Defendant further objects on the grounds that the interrogatory is unintelligible as currently

written as the terms "recorded guidelines, instructions, standards or training materials" are not

defined.

Defendant further objects to this interrogatory on the grounds that it seeks information

which is not reasonably calculated to lead to the discovery of admissible evidence, and is

therefore irrelevant to the disposition of this action.

Defendant further objects to this interrogatory on the grounds it seeks discovery of trade

secrets or otherwise confidential and/or proprietary business information.

2.      With respect to your response to Interrogatory No. 1 above, identify all persons involved in the drafting, preparation or creation of the guidelines, instructions, standards or training materials to which that interrogatory refers.

**OBJECTION:**

Defendant objects to this interrogatory on the grounds that it seeks information which is

not reasonably calculated to lead to the discovery of admissible evidence, and is therefore

irrelevant to the disposition of this action.

Defendant further objects to this interrogatory on the grounds that it is overbroad and

unduly burdensome in that, as currently written, it seeks the identification of *any* person who had

WLM_510202_1.DOC/DKRAFT

*any* involvement in the "drafting, preparation or creation" of the materials sought in Interrogatory No. 1, regardless of how tangential that person's involvement was.

3.    With respect to your response to Interrogatory No. 1 above, identify all documents that refer to, relate to or constitute evidence of the subject matter of your response to that interrogatory.

**OBJECTION:**

Defendant objects to this interrogatory on the grounds that it is overbroad and unduly burdensome in that it seeks information beyond the relevant time period involved in this action.

Defendant further objects to this interrogatory on the grounds that it seeks information which is not reasonably calculated to lead to the discovery of admissible evidence, and is therefore irrelevant to the disposition of this action.

Defendant further objects to this interrogatory on the grounds it seeks discovery of trade secrets or otherwise confidential and/or proprietary business information.

4.    With respect to any documents responsive to the Homseys' First Set of Requests for Production of Documents, but withheld by you under claim of privilege or protection:

    a)  Identify each such document;

    b)  Describe each such document by title or type;

    c)  State the date of each such document;

    d)  Identify all authors, recipients and copyees of each such document;

    e)  Describe in detail the subject matter of each such document; and

    f)  Identify the precise privilege or protection you claim for each such document.

**OBJECTION:**

Defendant objects to this interrogatory to the extent that it requires Defendant to exceed its obligations under the *Federal Rules of Civil Procedure* and the *Local Rules of the United States District Court for the District of Delaware.*

**ANSWER:**

Notwithstanding this objection or the general objections set forth above and incorporated herein, Defendant will provide such information in its privilege log.

WLM_510202_1.DOC/DKRAFT

## DOCUMENT REQUESTS

1.      This Policy.

**RESPONSE:**

Notwithstanding the general objections set forth above and incorporated herein,

Defendant will produce a verified copy of the Policy.

2.      All documents that refer or relate to the Claims.

**OBJECTION:**

Defendant objects to this request on the grounds that it does not identify the information

sought with reasonable particularity.  Defendant further objects on the grounds the request is

vague and/or ambiguous, overly broad and unduly burdensome in that it seeks "all documents."

Defendant further objects to the extent the request seeks documents that are already

within Plaintiff's possession or are as easily obtainable by Plaintiff from another, more

convenient, less burdensome and/or less expensive source.

Defendant further objects to the extent the request seeks documents that are protected by

the attorney-client privilege or attorney work-product doctrine or any other applicable privilege.

Defendant further objects to the extent the request seeks documents that are trade secrets

or otherwise confidential and/or proprietary business information.

**RESPONSE:**

Notwithstanding these objections or the general objections set forth above and

incorporated herein, Defendant will produce documents that are relevant, responsive and non-

privileged.

WLM_510202_1.DOC/DKRAFT

3.    All documents that refer to, relate to or constitute evidence of Vigilant's processing, handling or evaluating the claims.

**OBJECTION:**

Defendant objects to this request on the grounds that it is vague and ambiguous in that it does not define or explain what documents "constitute evidence."

Defendant further objects to this request to the extent that it seeks documents that are protected by the attorney-client privilege or attorney work-product doctrine or any other applicable privilege.

**RESPONSE:**

Notwithstanding these objections or the general objections set forth above and incorporated herein, Defendant will produce documents that are relevant, responsive and non-privileged.

4.    All writings, audiotapes, videotapes or other documents or tangible things (including without limitation claims manuals) used by you from January 1, 2005 through the present for the purpose of training, instructing or providing guidance to your employees, agents or other representatives in connection with the handling of claims arising under any "Chubb Masterpiece Policy" or similar insurance product (including without limitation claims for "Credit cards, forgery and counterfeiting" coverage).

**OBJECTION:**

Defendant objects to this request on the grounds that it is overbroad and unduly burdensome in that it seeks information beyond the relevant time period involved in this action and information relating to "the handling of claims arising under any "Chubb Masterpiece Policy" or similar insurance product."

Defendant further objects to this request on the grounds that it seeks information which is not reasonably calculated to lead to the discovery of admissible evidence, and is therefore irrelevant to the disposition of this action.

Defendant further objects to this request on the grounds that it seeks discovery of trade secrets or otherwise confidential and/or proprietary business information.

5.    All writings, audiotapes, videotapes or other documents or tangible things (including without limitation claims manuals) used by you from January 1, 2005 through the present for the purpose of training, instructing or providing guidance to your employees, agents or other representatives in connection with the handling of insurance claims generally.

**OBJECTION:**

Defendant objects to this request on the grounds that it is overbroad and unduly burdensome in that it seeks information beyond the relevant time period involved in this litigation and information concerning "insurance claims generally."

Defendant further objects to this request on the grounds that it seeks information which is not reasonably calculated to lead to the discovery of admissible evidence, and is therefore irrelevant to the disposition of this action.

Defendant further objects to this request on the grounds it seeks discovery of trade secrets or otherwise confidential and/or proprietary business information.

6.    All documents (other than documents relating to any particular claimant or insured) that refer or relate to the meaning, purpose, construction or effect of the "Credit cards, forgery and counterfeiting" coverage provision that appears within the Policy.

**OBJECTION:**

Defendant objects to this request on the grounds that it does not identify the information sought with reasonable particularity. Defendant further objects on the grounds the request is vague and/or ambiguous, overly broad and unduly burdensome.

Defendant further objects to the extent the request seeks documents that no longer exist or are not within the possession and/or control of the Defendant. Further, the "meaning, construction or effect" of such a provision may be set forth in documents that are obtainable by Plaintiff from another, more convenient, less burdensome and/or less expensive source.

WLM_510202_1.DOC/DKRAFT

Defendant further objects to the extent the request seeks documents that are protected by the attorney-client privilege or attorney work-product doctrine or any other applicable privilege.

Defendant further objects to the extent the request seeks documents that are trade secrets or otherwise confidential and/or proprietary business information.

**RESPONSE:**

Notwithstanding these objections or the general objections set forth above and incorporated herein, if such documents exist, Defendant will produce documents that are relevant, responsive and non-privileged.

7. All documents (other than documents relating to any particular claimant or insured) that refer or relate to the drafting, preparation or creation of the "Credit cards, forgery and counterfeiting" coverage provision that appears within the Policy.

**OBJECTION:**

Defendant objects to this request on the grounds that it does not identify the information sought with reasonable particularity. Defendant further objects on the grounds the request is vague and/or ambiguous, overly broad and unduly burdensome.

Defendant further objects to the extent the request seeks documents that no longer exist or are not within the possession and/or control of the Defendant. Further, documents relating to the "drafting, preparation or creation of" such a provision may be set forth in documents that are obtainable by Plaintiff from another, more convenient, less burdensome and/or less expensive source.

Defendant further objects to the extent the request seeks documents that are protected by the attorney-client privilege or attorney work-product doctrine or any other applicable privilege.

Defendant further objects to the extent the request seeks documents that are trade secrets or otherwise confidential and/or proprietary business information.

WLM_510202_1.DOC/DKRAFT

**RESPONSE:**

Notwithstanding these objections or the general objections set forth above and incorporated herein, if such documents exist, Defendant will produce documents that are relevant, responsive and non-privileged.

8.    All personnel files or records for those of Vigilant's employees, agents or other representatives who were involved at any time prior to April 20, 2007 in processing, handling or evaluating the Claims (limited, however, to that part of the responsive personnel files or records that refer or relate to the subject's performance of job duties consisting of or involving the processing, handling or evaluation of insurance claims).

**OBJECTION:**

Defendant objects to this request on the grounds that it does not identify the information sought with reasonable particularity. Defendant further objects on the grounds the request is vague and/or ambiguous, overly broad and unduly burdensome.

Defendant objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, and is therefore irrelevant to the disposition of this action. Specifically, information contained in a employees personnel file is well beyond the scope of information that may be relevant to the claims asserted in this litigation.

Defendant further objects to this request on the grounds that it seeks documents that are private and confidential and are not subject to disclosure in this action.

9.    Your most recent audited financial statement.

**OBJECTION:**

Defendant objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, and is therefore irrelevant to the disposition of this action.

WLM_510202_1.DOC/DKRAFT

Defendant further objects to this request on the grounds that the document sought is obtainable by Plaintiff from another, more convenient, less burdensome and/or less expensive source.

    10.    Your most recent annual report.

**OBJECTION**

Defendant objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, and is therefore irrelevant to the disposition of this action.

Defendant further objects to this request on the grounds that the document sought is obtainable by Plaintiff from another, more convenient, less burdensome and/or less expensive source.

    11.    All writings, audiotapes, videotapes or other documents identified in your responses to the Homseys' First Set of Interrogatories, served simultaneously herewith.

**OBJECTION:**

Defendant incorporates the objections set forth in its responses to Plaintiffs' First Set of Interrogatories.

**RESPONSE:**

Notwithstanding these objections or the general objections set forth above and incorporated herein, if such documents exist, Defendant will produce documents that are relevant, responsive and non-privileged.

- 12 -

Edwards Angell Palmer & Dodge LLP


By: _____
Denise Seastone Kraft (No. 2778)
919 North Market Street, Suite 1500
Wilmington, DE 19801
(302) 425-7106
(888) 325-9741 Fax
dkraft@eapdlaw.com

OF COUNSEL:

Mark Seiger, Esq.
Edwards Angell Palmer & Dodge LLP
90 State House Square
Hartford, CT  06103-3702
(860) 541-7745
(888) 325-9099 Fax

August 20, 2007

- 13 -

## VERIFICATION

I, Christopher T. Evans, declare under penalty of perjury that I have read the foregoing statement and that it is true and correct to the best of my knowledge, information and belief.

_____
Christopher T. Evans

## CERTIFICATE OF SERVICE

I, Denise Seastone Kraft, hereby certify that on this 20th day of August, 2007, I caused

true and correct copies of **Defendant Vigilant Insurance Company's Response To Plaintiff's**

**First Set Of Interrogatories And Request For Production** to be served on the following

counsel of record in the manner indicated:

**By Hand**

John Sheehan Spadaro, Esq.
John Sheehan Spadaro, LLC
724 Yorklyn Road
Suite 375
Hockessin, DE  19707
Phone: (302) 235-7745
Fax:    (302) 235-2536

Denise Seastone Kraft (No. 2778)

# EXHIBIT D

# Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1075400 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

C

Mariner's Cove Site B Associates v. Travelers
Indem. Co.
S.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
MARINER'S COVE SITE B ASSOCIATES, et al.,
Plaintiffs,
v.
TRAVELERS INDEMNITY COMPANY, et al.,
Defendants.
No. 04Civ.1913(KMW)(RLE).

May 2, 2005.

Memorandum Opinion & Order
ELLIS, Magistrate J.

## I. INTRODUCTION

*1 Plaintiffs are owners of an apartment complex
and parking lot in Battery Park City in downtown
Manhattan, near the former World Trade Center.
Defendants issued commercial insurance policies to
plaintiffs. These policies provided coverage for
losses from property damage, loss of business
income, and extra expenses. After September 11,
2001, plaintiffs filed claims for property damage
and business income loss in excess of $43 million.
Subsequently, plaintiffs brought an action against
defendants on March 10, 2004, alleging that
defendants wrongfully denied plaintiffs coverage.
On June 18, 2004, plaintiffs submitted their first
request for documents. Plaintiffs sought documents
regarding defendants' methods used to evaluate,
analyze, handle, and adjust plaintiffs' claims.
Specifically, plaintiffs requested defendants' claims
and underwriting manuals, request numbers 1-6,
and 12-13, and documents relating to defendants'
handling and evaluation of similar claims arising
out of the September 11, 2001 attacks, request
numbers 20-21. Defendants refused to produce
these documents, asserting that they were irrelevant

to plaintiffs' claims because the policy terms were
not ambiguous. Defendants also asserted that the
requests were overly broad, not reasonably
calculated to lead to admissible evidence, and
overly burdensome to produce. On February 2,
2005, plaintiffs submitted a motion under Federal
Rule of Civil Procedure 37 to compel defendants to
produce documents responsive to request numbers
1-6, 12-13, 20, and 21.

## II. DISCUSSION

Though defendants allude to burdensomeness, the
thrust of their argument to the Court was that this
was a straightforward case of applying the policy
provisions. In this, they are incorrect. To properly
interpret an insurance policy, it is necessary to
discern how that contract has been interpreted in the
past. To this end, documents regarding similar
claims of other insureds, the drafting history of a
policy, and claims manuals are relevant and
discoverable in actions to recover insurance
reimbursement. *See Charles Turi Jewelry Co., Inc.
v. The Hanover Ins. Cos.,* 1990 U.S. Dist. LEXIS
8358, at *4-6 (S.D.N.Y. July 10, 1990), *vacated in
part by Charles Turi Jewelry Co., Inc. v. The
Hanover Ins. Cos.,* 1990 U.S. Dist. LEXIS 8939
(S.D.N.Y. July 18, 1990); *Champion International
Corp. v. Liberty Mut. Ins. Co.,* 1989 U.S. Dist.
LEXIS 12929, *2-4, *aff'd,* 128 F.R.D. 608
(S.D.N.Y.1989); *Young v. Liberty Mut. Ins. Co.,*
1999 U.S. Dist. LEXIS 6987, at *15 (D.Conn. Feb.
16, 1999). To the extent that defendants maintain
that evidence of other claims will not be admissible,
that contention is premature. This is the discovery
phase. A party may obtain discovery of documents
and materials which are relevant, nonprivileged, and
reasonably calculated to lead to admissible
evidence. *See* Fed. R. Civ. P. 26(b)(1). Moreover,
under New York law, evidence of intent is relevant
until there has been a finding that the policy is
subject to only one interpretation. *Champion
International Corp. v. Liberty Mut. Ins. Co.,* 129

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2

Not Reported in F.Supp.2d, 2005 WL 1075400 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**


F.R.D. 63, 67 (S.D.N.Y.1989). Here, plaintiffs seek
evidence concerning the genesis of the applicable
provision and its application to other insureds. They
are entitled to this information during discovery.

**\*2** Accordingly, IT IS HEREBY ORDERED
THAT defendants produce copies of the requested
discovery materials by May 10, 2005.

SO ORDERED

S.D.N.Y.,2005.
Mariner's Cove Site B Associates v. Travelers
Indem. Co.
Not Reported in F.Supp.2d, 2005 WL 1075400
(S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: SEP 07,2007

**KEYCITE**

**C** Mariner's Cove Site B Associates v. Travelers Indem. Co., 2005 WL 1075400 (S.D.N.Y., May 02, 2005) (NO. 04CIV.1913(KMW)(RLE))

**History**

=> 1 **Mariner's Cove Site B Associates v. Travelers Indem. Co.,** 2005 WL 1075400 (S.D.N.Y. May 02, 2005) (NO. 04CIV.1913(KMW)(RLE))

**Court Documents**
**Dockets (U.S.A.)**

**S.D.N.Y.**

2 MARINER'S COVE SITE B ASSOCIATES ET AL v. TRAVELERS INDEMNITY COMPANY ET AL, NO. 1:04cv01913 (Docket) (S.D.N.Y. Mar. 10, 2004)

© Copyright 2007 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

# EXHIBIT E

# Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Stonewall Ins. Co. v. National Gypsum Co.
S.D.N.Y.,1988.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
STONEWALL INSURANCE COMPANY,
Plaintiff,
v.
NATIONAL GYPSUM COMPANY, et al.
Defendants.
NATIONAL GYPSUM COMPANY, et al.
Third-Party Plaintiffs,
v.
INTERNATIONAL INSURANCE COMPANY
and H.S. Weavers (Underwriting) Agencies, Ltd.,
Third Party Defendants.
**No. 86 CIV. 9671 (SWK).**

Sept. 6, 1988.

MEMORANDUM OPINION AND ORDER
KRAM, District Judge.
**\*1** This case is presently before this Court on
various defendants' objections to two discovery
orders of Magistrate Bernikow issued in this Case
on March 21, 1988 ("March Order") and April 8,
1988 ("April Order") 1988.

This is a large and complicated case involving thirty
parties and an amount in controversy in excess of
$700 million. It involves a dispute as to whether
National Gypsum Company ("NGC") is entitled to
insurance coverage for claims asserted against it by
the owners of buildings in which NGC's
asbestos-containing products were purportedly
installed. The parties to this action are NGC and a
host of other insurers who provided primary and
varying levels of excess insurance policies to NGC
over a broad period of time. Plaintiff commenced
this declaratory judgment action naming as
defendants NGC and these other insurance
companies. The action sought to resolve the
question of whether Stonewall and the other

insurance companies have any obligation under
their respective policies to defend and indemnify
NGC with regard to the claims brought by the
owners of the buildings.

Discovery in this case is being supervised by
Magistrate Bernikow pursuant to this Court's
referral. On March 21, 1988, in response to NGC's
motion to compel discovery the Magistrate issued a
discovery order ordering that the other defendants ("
defendants") provide certain discovery requested by
NGC. After reviewing additional briefs submitted
by the parties concerning these other discovery
requests and hearing argument on these issues, the
Magistrate issued a second order on April 8, 1988.

THE OBJECTIONS

The March Order:

Defendant Continental Casualty Company ("
Continental") objects to those aspects of the March
Order which ask for discovery concerning claims
relating to materials other than asbestos (i.e., lead
paint, foam insulation, pollution, toxic or hazardous
waste), insureds other than NGC, reinsurance
agreements and reserves. Defendants American
Home Assurance Company, Granite State Insurance
Company, AIU Insurance Company, National
Union Fire insurance company of Pittsburgh, P.A.,
United States Fire Insurance Company, and
International Insurance company ("AIG Companies"
), Commercial Union Insurance Company ("
Commercial") and United States Fire Insurance
Company ("U.S. Fire") object specifically to
paragraphs 3,4,-5 and 6 of the Magistrate's Order
which discuss claims regarding other materials and
other insureds (paragraphs 3 and 4), reinsurance
(paragraph 6) and reserves (paragraph 5). The
objections filed by all the defendants thus concern
the same discovery and involve essentially the same
arguments.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2

Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

The April Order:

The AIG Companies, Commercial and U.S. Fire object to paragraphs 1, 2, 3, 6, 8, 10 and 13 of the Order insofar as they require disclosure of information concerning other policyholders, other types of claims and reinsurance. Continental objects to paragraphs 1, 3, 6, 8, 10 and 13 of the Order as well.

## DISCUSSION

*2 Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, this Court may only modify or set aside those portions of the Magistrate's orders which are "clearly erroneous or contrary to the law" . Moreover, in this Circuit, the Magistrate is afforded broad discretion which will be overruled only if abused. Empire Volkswagon, Inc. v. World-Wide Volkswagon, 95 F.R.D. 398, 399 (S.D.N.Y.1982); Citicorp v. Interbank Card Association, 478 F.Supp. 756, 765 (S.D.N.Y.1979).

It appears that defendants object to four areas of discovery ordered by the Magistrate. This Court will turn to each to determine whether the Magistrate's order of discovery in the area was either "clearly erroneous or contrary to the law".

Discovery Relating to Other Policyholders:

The March Order requires defendants to produce the "ten earliest and ten most recent claims files subsequent to 1969" that deal with claims asserted regarding asbestos in buildings, leaded paint, foam insulation, and pollution and/or toxic or hazardous waste. (March Order at Para. 3). These files will, of course, include many files of insured parties other than NGC. Continental asserts that this will require production of "anything and everything" related to at least 80 claims, "most or all of which" will be against insureds other than NGC. Continental asserts that the burden of production of such files is "extreme" and that the relevance of such material is "remote or nonexistent". (Continental Mem. at 5). The AIG Companies argue that courts generally do not permit discovery

regarding "other insureds". NGC argues here, as it did before the Magistrate, that the requested information regarding other insureds is relevant here because the policies issued in this case employed standardized industry-wide definitions, terms, conditions and exclusions and the non-party insured information is pertinent to the extent that coverage was provided under identical standardized policies to other insureds who are defending the same or comparable "delayed manifestation" cases, i.e., those involving asbestos-in-buildings, foam insulation, or leaded paint. NGC asserts that this is particularly true with respect to the asbestos cases " which are essentially indistinguishable one from the next". (NGC Mem. at 10). NGC asserts that these files will provide interpretive documents reflecting the meaning of critical terms in the policies such as " occurrence", "property damage", and "pollution". Id.

Two recent decisions in this Circuit concerning the discoverability of information regarding other insureds have reached different conclusions. In Maryland Casualty v. W.R. Grace, No. 83 Civ. 7451, Slip Op. (S.D.N.Y., March 4, 1986), Magistrate Bernikow held that documents and answers to interrogatories pertaining to delayed manifestation claims filed against policyholders other than the defendant should be produced. In Maryland Casualty, the Magistrate recognized that a "substantial burden of production" had been demonstrated by plaintiff and ordered that the parties present a joint plan for limited production to him, or in the alternative, that each party present its own plan for limited production. Slip Op. at 2. In Olin Corporation v. Insurance Company of North America, No. 84 Civ. 1968, Slip Op., (S.D.N.Y., July 10, 1986), the Special Master held that discovery concerning defendant's practices with regard to insurance policies, and specifically delayed manifestation claims, of insureds other than plaintiff, need not be provided. The Special Master found that pursuant to the Judge's prior rulings on the parties' summary judgment motions, in order to show coverage for the disputed claims, plaintiff need only show "the cause of the occurrence (accident or exposure), the result (injury, sickness or disease) and that the result occurred during the policy period". Slip Op. at 4

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                         Page 3

Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

(citing Olin Corporation v. Insurance Company of North America, 603 F.Supp. 445, 448-449), aff'd, No. 84-1968, Slip. Op. (S.D.N.Y., December 19, 1986). The Special Master stated that "since the Court has already ruled that Olin must prove that an injury in fact occurred during the policy period in order to obtain coverage, there is no need for discovery as to the interpretation of the meaning of the Olin-INA Comprehensive General Liability (" CGL") Policy. Thus to the extent that Olin is seeking discovery to show how INA or the other defendants interpreted a CGL policy issued to another insured in connection with a delayed manifestation claim, such discovery is irrelevant to the issues of this case." slip. op at 7.

*3 In this case, unlike in Olin, the interpretation of the various policies is at issue, and the Magistrate, in ordering discovery related to the policy of other insureds determined that such policies would or could be useful in the interpretive process, and are thus relevant and discoverable under Rule 26 of the Federal Rules of Civil Procedure, which provides that parties may obtain discovery that is relevant, not privileged, and, if the information sought will be inadmissible at trial, that is reasonably calculated to lead to the discovery of admissible evidence.

Rule 26 also provides that discovery shall be limited by the court if the court determines that the discovery is "unduly burdensome and expensive". The Magistrate apparently recognized that the production of documents relating to other policyholders would be burdensome for the defendants and limited it accordingly. The March Order provides that only the ten earliest and ten most recent claims files since 1969 be produced, and that they only be produced with regard to the four claims enumerated above. The March Order specifically provides that the defendants conduct a " reasonable search and inquiry" in order to locate the appropriate documents.

This Court thus finds that the Magistrate's decision to order limited discovery regarding other insureds is neither "clearly erroneous" nor "contrary to the law" of this circuit or Rule 26. This aspect of the Magistrate's Orders is therefore affirmed.

### Discovery Relating to Other Claims

The March Order requires that defendants produce memoranda and the "ten earliest and ten most recent " claims files regarding lead paint "property damage " claims, foam insulation "property damage" claims, and claims based on pollution or toxic or hazardous waste [FN1], in addition to files and information regarding the asbestos-in-buildings claims. (March order at Para. 3). The March order also provides that defendants produce "directives, statements of policy, claim-handling manuals and guidelines, underwriting guidelines, and interpretive bulletins" concerning the coverage and handling of all four of these types of claims. (March Order at Para. 4). The April Order requires that defendants produce "directives, statements of policy, claim-handling manuals and guidelines, underwriting guidelines, and interpretive bulletins, guidelines and statements concerning the handling of, or coverage of underwriting issues arising with respect to delayed or protracted manifestation claims." (April Order at Para. 1)

NGC claims that this discovery is relevant and "vital " to their case because it will show the interpretation and application of standardized industry-wide terms, which are at issue here, and the assertion of the same defenses to situations which are comparable or almost identical to the one here-the presence in buildings of various products which are alleged, sometime after installation, to have caused property damage and to have created an unreasonable health hazard, thereby necessitating remedial activity. In sum, NGC claims that this discovery will reveal cases involving the same or very similar problems of policy interpretation. The defendants object to the production of this discovery on the grounds that it is unduly burdensome and irrelevant, and that as such the Magistrate's orders requiring its production are either "clearly erroneous" or "contrary to the law".

*4 Defendants point to three cases in this Circuit in support of their position. First, defendants point to American Home Products Corp. v. Liberty Mutual Insurance, 565 F.Supp. 1485 (S.D.N.Y.1983) aff'd as modified, 748 F.2d 760 (2d Cir.1984) for the proposition that the " 'trigger of coverage' with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 4

Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

respect to claims involving the effects of exposure to asbestos does not control in cases involving coverage for claims concerning injuries allegedly caused by exposure to DES, because such determination must be 'based upon the facts proved in each particular case' '. Mem. at 13 (citing American Home Products. supra, 565 F.Supp. at 1489). Defendants apparently cite this case in support of their claim that analogies to other claims is inappropriate and irrelevant. This case is simply inappsite. In American Home, supra, a summary judgment ruling, the parties were arguing over whether "exposure" or "manifestation" triggered coverage in DES and other similar drug cases. The Court found that analogy to asbestos cases was inappropriate because "the drugs at issue in this case differ markedly from asbestos in the manner in which they are alleged to injure humans." Id. at 1493. This case did not rule on the discoverability of information concerning asbestos cases for the purpose of a case involving drugs, although it speaks to the relevance of asbestos cases to the interpretation of contracts in DES cases. This is simply not the situation before this Court. Plaintiff seeks, and the Magistrate has ordered, discovery concerning property damage claims resulting from the installation of hazardous materials other than asbestos-specifically lead paint and foam insulation. FN2 The potential usefulness of this information is apparent, unless defendants can somehow show that the nature of the damage sustained by the installation of these products is so radically different from asbestos as to preclude any usefulness in contract interpretation. Defendant's have not even argued this point.

The second case cited by defendants, Schering Corp. v. Home Insurance Co., 544 F.Supp. 613, 617 (E.D.N.Y.1982), rev'd on other grounds, 712 F.2d 4 (2d Cir.1983), also involved the interpretation of a policy in connection with DES claims. On summary judgment the court found cases involving asbestos inapposite because they had been decided after the presentation of medical evidence regarding asbestos' "progressive injurious process" and no such evidence had been presented regarding DES. Id. at 619. This court finds this case unpersuasive for the reasons set forth in the above discussion of American Home Products.

Finally, defendants look to Olin, supra. As discussed above, in Olin the Special Master found that since the Court had determined that Olin must prove that an injury in fact occurred during the policy period in order to obtain coverage, there was no need for discovery as to the meaning of the policy. It was on this basis, not present here, that the Special Master denied discovery with respect to both other insureds and other types of " delayed-manifestation" claims.

*5 Based on these cases, defendants have failed to demonstrate that the Magistrate rulings with respect to "other claims" discovery was either "clearly erroneous" or "contrary to the law". This Court notes without discussion that several decisions, within this Circuit and without, have permitted such discovery. See, e.g., Maryland Casualty Co. v. W.R. Grace & Co., No. 83 Civ. 7451, Slip. Op. (S.D.N.Y. March 4, 1986). This Court also notes that the Magistrate, perceiving the necessity for Rule 26 limitations in recognition of the burden this discovery would impose on defendants, imposed such limitations. Defendants objections to the production of other claims discovery as provided in the Magistrate's Orders are thus denied.


Discovery Related to Reinsurance

In response to NGC's request for "all documents" concerning reinsurance relating to any NGC insurance policy (Request No. 12), the March Order requires the insurers to produce all reinsurance documents, subject to certain limitations set forth in the Court's Order in Maryland Casualty Company v. W.R. Grace & Co., 83 Civ. 7451, dated March 4, 1986. Under the March Order those insurers who do not assert a 'lost policy' defense need only produce reinsurance documents to the extent that such documents relate to general liability coverage issued to NGC And relate to asbestos, lead paint, foam insulation and pollution or hazardous waste claims. None of the insurers must disclose the amount of the reinsurance.

Defendants contend that reinsurance information is not relevant, and also that it is privileged because it is prepared in anticipation of litigation.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Defendant's also argue that the production of reinsurance information is inconsistent with the directives of Federal Rule of Civil Procedure 26(b)(2) which provides in relevant part, "A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on the insurance business may be liable...."

With regard to relevance, defendants contend that an insurer's internal decision to obtain reinsurance is based principally on business considerations, and not on questions of policy interpretation; defendants contend that the decision to cede a portion of the risk is not based on any interpretation of a policy's language, but on actuarial considerations grounded merely on the possibility, no matter how unlikely, that a claim will be asserted against the insurer. NGC argues that reinsurance information is relevant to this case. NGC contends that these documents may reflect an insurer's understanding of the risk it underwrote and thereby rebut the defense, raised by several insurers, that NGC failed to disclose information sufficient to apprise the insurer of that risk. NGC argues that the insurers' notices of claims to their reinsurers may evidence the insurer's understanding of the underlying claims and may contain admissions that these claims are covered.

In this circuit, discovery of reinsurance information has been allowed, and thus has presumably been found to be relevant. Maryland Casualty v. W.R. Grace & Co., No. 83-7451, slip op. (S.D.N.Y. March 4, 1985) (In case involving primary insurers only Magistrate's order requires production of reinsurance information without opinion) [FN3]. Moreover, the cases cited by defendants in support of their argument that the reinsurance information is not relevant, all of which are without this Circuit, are unpersuasive. For example, in Independent Petroleum Corp. v. Aetna Casualty and Surety Co., 117 F.R.D. 283 (D.D.C.1986), the Magistrate denied the production of reinsurance documents without explanation. In UNR Industries. Inc. v. Continental Insurance Co., No. 85-3532 (N.D.Ill. Sept. 4, 1986), the court ruled, on motion in limine, that evidence of reinsurance was not admissible at trial, which is not the issue here, since information may be discoverable even if not admissible at trial.

*6 In addition, defendants' statement that reinsurance agreements are not discoverable under Rule 26(b)(2) is without authority either in this circuit or elsewhere, and relies only on their reading of the rationale behind the Rule and citation'to advisory committee notes. In contrast, NGC has cited cases in which discovery of reinsurance information was permitted under Rule 26(b)(2). See National Union Fire Ins. Co. v. Continental Illinois Corp., 116 F.R.D. 78, 83-84 (N.D.Ill.1987).

Finally, with regard to defendant's work privilege argument, the Magistrate's Order in no way precludes raising this objection with regard to specific information as it comes up. The Order is subject to the Order in the Maryland Casualty case, which denies discovery of "privileged communications between the carriers and their outside counsel".

For these reasons this Court finds that the Magistrate's decision regarding reinsurance was neither "clearly erroneous" nor "contrary to the law" and defendant's objections to it are denied.

### Discovery Regarding Reserves

In the March Order the Magistrate partially granted NGC's request for information concerning reserves set by the insurers by allowing NGC to address the subject matter of reserves with respect to asbestos-in-building claims in any deposition taken in this case. The Order also allows NGC to seek further leave from the Court to obtain additional reserve information.

Defendants assert that the information pertaining to reserves is irrelevant. Defendants assert that reserves are simply amounts insurance carriers set aside, ordinarily pursuant to statutory requirements, in response to claims asserted against their insureds. According to defendants, reserves reflect merely the possibility, no matter how remote or unlikely, that a claim may be resolved with a payment by the insurer. Defendants assert that the setting of a reserve on a case, or the level at which a reserve may be set, is not an "admission" that the insured is liable on the claim, that the claim is covered by a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

policy, or that the insurer actually believes that the dollar amount of the a contingent liability will reach any particular level. In addition defendants assert that information regarding reserves is protected by the attorney-client privilege or the work-product doctrine.

NGC asserts that the reserves information may be relevant in the following ways: the existence and timing of the establishment of reserves may show notice of the underlying claims; the existence of reserves may rebut a "lost policy" defense; the existence of reserves may constitute evidence of an insurer's duty to defend; the establishment of reserves for certain kinds of claims implies that the insurer has made a determination that such claims may be (although not necessarily are) covered and thus may have to be paid.

In this Circuit, Courts have both permitted and denied discovery regarding reserves. See Maryland Casualty Co. v. W.R. Grace & Co., No. 83-7451 (S.D.N.Y. March 4, 1986) (granting Grace's motion to compel reserves discovery in part); Wabco Trade Co. v. Great American Insurance Co., No. 82-4294, slip. op., (S.D.N.Y. Apr. 14, 1983) (court denied discovery of particular reserves documents after reviewing the documents and determining that they were privileged). Defendants have submitted, in addition, the transcript of a conference before a Special Master in Olin, supra, in which the Special master held that in that case "the possible benefit of disclosing reserves in discovery are outweighed by the burden of producing the information and the effect on the sound reserves setting practices were concluded if such discovery were granted routinely". Tr. at 27.

*7 In this case, the Magistrate has substantially denied NGC's request for reserves information. The extent to which the request was granted-allowing NGC to explore the area on deposition-is consistent with the case law in this Circuit and the dictates of Rule 26 and are neither " clear error" nor "contrary to the law". Unlike in Olin, the very limited burden imposed by the Magistrate's request does not outweigh the possibly relevant information that may be gleaned from the reserves discovery. In addition, defendants will certainly have the opportunity, upon deposition, to object to the production of certain information on the grounds of privilege.

For these reasons, defendants objections to the magistrate's Order insofar as it discusses discovery are denied.

Specific Objections to the April Order

The AIG companies and those defendants accompanying them in their memorandum object to those aspects of the April order which deal with information concerning other policyholders, other claims, and reinsurance for the same reasons set forth in their objections to this discovery in the March Order; they in fact refer only to their memorandum of objections to the March Order in support of these objections. These objections are thus denied for the reasons set forth above.

Continental also objects to the April Order for the same reasons as formed the basis for its objections to the March Order and those objections are denied for the reasons stated above. Continental also objects to specific aspects of the April Order which it alleges were not present in the March Order and which it alleges are either "clearly erroneous" or " contrary to the law". Continental object specifically to para. 1 of the April Order which it claims expands the March Order by calling for the production of information pertaining to any " delayed or protracted manifestation claims". Continental notes that the Order goes beyond NGC's original request for "delayed or protracted manifestation claims" relating only to property damage. Continental asserts that the production and redaction to names of the other insureds will be redacted to protect their privacy rights-process will be enormously burdensome. Continental also asserts that documents related to the other delayed or protracted manifestation claims-such as Agent Orange, DES or DDT will have no relevance to this case.

NGC defends the relevance of these documents for essentially the same reasons it argued the relevance of lead paint, foam insulation and pollution claims,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

discussed above; NGC alleges that this information will relate to the application "or interpretation of critical policy terms and conditions, such as " occurrence", "accident", "property damage", " trigger of coverage". This Court finds this to be essentially the same situation as above, and in light of the significant restrictions placed on this additional discovery by the Magistrate this Court does not find that the Magistrate clearly erred or acted contrary to the law in ordering this discovery. Continental objection to this additional discovery is therefore denied.

**\*8** So Ordered.

> FN1. Only those insurers who assert the " pollution exclusion" defense are asked to produce these files.

> FN2. Those insurers who have raised the " pollution exclusion" defense are also required to produce discovery with respect to all-not just property damage, pollution and hazardous waste claims. NGC contends that the "pollution exclusion" defense has nothing to do with this case, but demands discovery on the issue since it has been raised.

> FN3. Defendants make much of the fact that the Maryland Casualty order involved only primary insurers. This fact is at best relevant to NGC's argument the reinsurance information any evidence a " duty to defend" the "duty to defend" question can only be relevant to primary insurers, none of whom are participating in this appeal. This court notes that the " duty to defend" argument is one of only several raised by NGC in support if its relevance argument.

S.D.N.Y.,1988.
Stonewall Ins. Co. v. National Gypsum Co.
Not Reported in F.Supp., 1988 WL 96159 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: SEP 07,2007

## KEYCITE

**H**Stonewall Ins. Co. v. National Gypsum Co., 1988 WL 96159 (S.D.N.Y., Sep 06, 1988) (NO. 86 CIV. 9671 (SWK))

### History
### Direct History

=>    1  **Stonewall Ins. Co. v. National Gypsum Co.,** 1988 WL 96159 (S.D.N.Y. Sep 06, 1988) (NO. 86 CIV. 9671 (SWK))

### Related References (U.S.A.)

**H**    2  Stonewall Ins. Co. v. National Gypsum Co., 1990 WL 9275 (S.D.N.Y. Feb 01, 1990) (NO. 86 CIV. 9671 (SWK))

**H**    3  Stonewall Ins. Co. v. National Gypsum Co., 1991 WL 283520 (S.D.N.Y. Dec 23, 1991) (NO. 86 CIV. 9671 (JSM))

▷    4  Stonewall Ins. Co. v. National Gypsum Co., 1991 WL 320046 (S.D.N.Y. Dec 31, 1991) (NO. 86 CIV. 9671 (JSM))
        *Subsequently Affirmed by*
▷    5  Stonewall Ins. Co. v. Asbestos Claims Management Corp., 73 F.3d 1178, 64 USLW 2447 (2nd Cir.(N.Y.) Dec 13, 1995) (NO. 93-7314(L), 93-7382CON, 93-7390CON, 1300, 93-7386CON, 93-7392CON, 93-7380CON, 93-7388CON, 93-7396CON)
        *Opinion Modified on Denial of Rehearing by*
▷    6  Stonewall Ins. Co. v. Asbestos Claims Management Corp., 85 F.3d 49 (2nd Cir.(N.Y.) May 20, 1996) (NO. 93-7314 (L), 1300)
        *AND On Remand to*
**H**    7  Stonewall Ins. Co. v. Asbestos Claims Management Corp., 1998 WL 405047 (S.D.N.Y. Jul 17, 1998) (NO. 86 CIV. 9671 (JSM))

**H**    8  Stonewall Ins. Co. v. National Gypsum Co., 1992 WL 47363 (S.D.N.Y. Mar 04, 1992) (NO. 86 CIV. 9671 (JSM))

**H**    9  Stonewall Ins. Co. v. National Gypsum Co., 1992 WL 51567 (S.D.N.Y. Mar 09, 1992) (NO. 86 CIV. 9671 (JSM))

►    10  Stonewall Ins. Co. v. National Gypsum Co., 1992 WL 123144 (S.D.N.Y. May 27, 1992) (NO. 86 CIV. 9671 (JSM))
        *Affirmed in Part, Reversed in Part by*
▷    11  Stonewall Ins. Co. v. Asbestos Claims Management Corp., 73 F.3d 1178, 64 USLW 2447 (2nd Cir.(N.Y.) Dec 13, 1995) (NO. 93-7314(L), 93-7382CON, 93-7390CON, 1300, 93-7386CON, 93-7392CON, 93-7380CON, 93-7388CON, 93-7396CON)
        *Opinion Modified on Denial of Rehearing by*
▷    12  Stonewall Ins. Co. v. Asbestos Claims Management Corp., 85 F.3d 49 (2nd Cir.(N.Y.) May 20, 1996) (NO. 93-7314 (L), 1300)

© Copyright 2007 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

<i>AND On Remand to</i>

H    13   Stonewall Ins. Co. v. Asbestos Claims Management Corp., 1998 WL 405047 (S.D.N.Y. Jul 17, 1998) (NO. 86 CIV. 9671 (JSM))

▷    14   Stonewall Ins. Co. v. National Gypsum Co., 1992 WL 163003 (S.D.N.Y. Jun 24, 1992) (NO. 86 CIV. 9671 (JSM))
<i>Affirmed by</i>
▷    15   Stonewall Ins. Co. v. Asbestos Claims Management Corp., 73 F.3d 1178, 64 USLW 2447 (2nd Cir.(N.Y.) Dec 13, 1995) (NO. 93-7314(L), 93-7382CON, 93-7390CON, 1300, 93-7386CON, 93-7392CON, 93-7380CON, 93-7388CON, 93-7396CON)
<i>Opinion Modified on Denial of Rehearing by</i>
▷    16   Stonewall Ins. Co. v. Asbestos Claims Management Corp., 85 F.3d 49 (2nd Cir.(N.Y.) May 20, 1996) (NO. 93-7314 (L), 1300)
<i>AND On Remand to</i>
H    17   Stonewall Ins. Co. v. Asbestos Claims Management Corp., 1998 WL 405047 (S.D.N.Y. Jul 17, 1998) (NO. 86 CIV. 9671 (JSM))

▷    18   Stonewall Ins. Co. v. National Gypsum Co., 1992 WL 163180 (S.D.N.Y. Jun 24, 1992) (NO. 86 CIV. 9671 (JSM))
<i>Affirmed as Modified by</i>
▷    19   Stonewall Ins. Co. v. Asbestos Claims Management Corp., 73 F.3d 1178, 64 USLW 2447 (2nd Cir.(N.Y.) Dec 13, 1995) (NO. 93-7314(L), 93-7382CON, 93-7390CON, 1300, 93-7386CON, 93-7392CON, 93-7380CON, 93-7388CON, 93-7396CON)
<i>Opinion Modified on Denial of Rehearing by</i>
▷    20   Stonewall Ins. Co. v. Asbestos Claims Management Corp., 85 F.3d 49 (2nd Cir.(N.Y.) May 20, 1996) (NO. 93-7314 (L), 1300)
<i>AND On Remand to</i>
H    21   Stonewall Ins. Co. v. Asbestos Claims Management Corp., 1998 WL 405047 (S.D.N.Y. Jul 17, 1998) (NO. 86 CIV. 9671 (JSM))

H    22   Stonewall Ins. Co. v. National Gypsum Co., 1992 WL 188434 (S.D.N.Y. Jul 28, 1992) (NO. 86 CIV. 9671 (JSM))

▷    23   Stonewall Ins. Co. v. National Gypsum Co., 1992 WL 188433 (S.D.N.Y. Jul 29, 1992) (NO. 86 CIV. 9671 (JSM))
<i>Order Modified by</i>
H    24   Stonewall Ins. Co. v. National Gypsum Co., 1992 WL 281400 (S.D.N.Y. Sep 25, 1992) (NO. 86 CIV. 9671 (JSM))

▷    25   Stonewall Ins. Co. v. National Gypsum Co., 1992 WL 188433 (S.D.N.Y. Jul 29, 1992) (NO. 86 CIV. 9671 (JSM))
<i>Affirmed by</i>
▷    26   Stonewall Ins. Co. v. Asbestos Claims Management Corp., 73 F.3d 1178, 64 USLW 2447 (2nd Cir.(N.Y.) Dec 13, 1995) (NO. 93-7314(L), 93-7382CON, 93-7390CON, 1300, 93-7386CON, 93-7392CON, 93-7380CON, 93-7388CON, 93-7396CON)
<i>Opinion Modified on Denial of Rehearing by</i>
▷    27   Stonewall Ins. Co. v. Asbestos Claims Management Corp., 85 F.3d 49 (2nd Cir.(N.Y.) May 20, 1996) (NO. 93-7314 (L), 1300)
<i>AND On Remand to</i>

© Copyright 2007 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

H    28  Stonewall Ins. Co. v. Asbestos Claims Management Corp., 1998 WL 405047 (S.D.N.Y. Jul 17, 1998) (NO. 86 CIV. 9671 (JSM))

H    29  Stonewall Ins. Co. v. National Gypsum Co., 1992 WL 281401 (S.D.N.Y. Sep 25, 1992) (NO. 86 CIV. 9671 (JSM))

▷    30  Stonewall Ins. Co. v. National Gypsum Co., 1992 WL 296435 (S.D.N.Y. Oct 06, 1992) (NO. 86 CIV. 9671 (JSM))
*Affirmed by*

▷    31  Stonewall Ins. Co. v. Asbestos Claims Management Corp., 73 F.3d 1178, 64 USLW 2447 (2nd Cir.(N.Y.) Dec 13, 1995) (NO. 93-7314(L), 93-7382CON, 93-7390CON, 1300, 93-7386CON, 93-7392CON, 93-7380CON, 93-7388CON, 93-7396CON)
*Opinion Modified on Denial of Rehearing by*

▷    32  Stonewall Ins. Co. v. Asbestos Claims Management Corp., 85 F.3d 49 (2nd Cir.(N.Y.) May 20, 1996) (NO. 93-7314 (L), 1300)
*AND On Remand to*

H    33  Stonewall Ins. Co. v. Asbestos Claims Management Corp., 1998 WL 405047 (S.D.N.Y. Jul 17, 1998) (NO. 86 CIV. 9671 (JSM))

H    34  Stonewall Ins. Co. v. National Gypsum Co., 1993 WL 33638 (S.D.N.Y. Feb 03, 1993) (NO. 86 CIV. 9671 (JSM))

►    35  In Matter of Arbitration Between Nat. Gypsum Co. and U.S. Fire Ins. Co., 1995 WL 413278 (S.D.N.Y. Jul 13, 1995) (NO. 95 CIV. 1152 (JSM))
*Judgment Reversed by*

▷    36  U.S. Fire Ins. Co. v. National Gypsum Co., 101 F.3d 813, 65 USLW 2337 (2nd Cir.(N.Y.) Nov 04, 1996) (NO. 1761, 95-7806)
*Certiorari Denied by*

H    37  U.S. Fire Ins. Co. v. Asbestos Claims Management Corp., 521 U.S. 1120, 117 S.Ct. 2512, 138 L.Ed.2d 1015, 65 USLW 3742, 65 USLW 3856, 65 USLW 3861 (U.S. Jun 27, 1997) (NO. 96-1710)

▷    38  U.S. Fire Ins. Co. v. National Gypsum Co., 101 F.3d 813, 65 USLW 2337 (2nd Cir.(N.Y.) Nov 04, 1996) (NO. 1761, 95-7806)
*Certiorari Denied by*

H    39  U.S. Fire Ins. Co. v. Asbestos Claims Management Corp., 521 U.S. 1120, 117 S.Ct. 2512, 138 L.Ed.2d 1015, 65 USLW 3742, 65 USLW 3856, 65 USLW 3861 (U.S. Jun 27, 1997) (NO. 96-1710)

**Court Documents**
**Trial Court Documents (U.S.A.)**

**S.D.N.Y. Expert Testimony**
    40  STONEWALL INSURANCE CO., v. NATIONAL GYPSUM CO., et al., 1986 WL 1167347 (Expert Deposition) (S.D.N.Y. 1986) **(Deposition of Dr. J. Carl Barrett)** (NO. 86CV09671)
    41  STONEWALL INSURANCE CO., v. NATIONAL GYPSUM CO., et al., 1986 WL 1167348 (Expert Deposition) (S.D.N.Y. 1986) **(Deposition of Paul E. Eipstein)** (NO. 86CV09671)
    42  STONEWALL INSURANCE CO., v. NATIONAL GYPSUM CO., et al., 1986 WL 1167349 (Expert Deposition) (S.D.N.Y. 1986) **(Deposition of Dr. Joseph Richard Landolph, Jr.)** (NO. 86CV09671)

© Copyright 2007 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

43  STONEWALL INSURANCE CO., v. NATIONAL GYPSUM COMPANY, et al., 1992 WL 12567986 (Expert Deposition) (S.D.N.Y. Oct. 9, 1992) **(Deposition of Martha Wilke Murray)** (NO. 86CV09671)

44  STONEWALL INSURANCE COMPANY, Plaintiff, v. NATIONAL GYPSUM COMPANY, et al., Defendants; National Gypsum Company, Third-Party Plaintiff, v. International Insurance Company and H.S. Weavers (Underwriting) Agencies, Ltd., Third-Party Defendants., 1992 WL 12567987 (Expert Deposition) (S.D.N.Y. Oct. 9, 1992) **(Deposition of Dr. Hans Weill)** (NO. 869671(JSM))

© Copyright 2007 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

# EXHIBIT F

Westlaw.

Not Reported in A.2d                                                Page 1

Not Reported in A.2d, 2002 WL 31478806 (Del.Super.)
(Cite as: Not Reported in A.2d)

**H**
Crowhorn v. Nationwide Mut. Ins. Co.
Del.Super.,2002.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
James M. CROWHORN, on behalf of himself and
all others similarly situated, Plaintiff,
v.
NATIONWIDE MUTUAL INSURANCE
COMPANY, Defendant.
**No. Civ.A. 00C-06-010 WL.**

Submitted Aug. 27, 2002.
Decided Sept. 24, 2002.

Upon Defendant's Motion for Reconsideration of
Appeal of Commissioner's Order of May 9, 2002.
Denied.

John S. Spadaro, and Roger D. Landon, of Murphy,
Spadaro & Landon, Wilmington, Delaware for the
Plaintiff.
Nicholas E. Skiles, of Swartz, Campbell &
Detweiler, Wilmington, Delaware, Curtis P.
Cheyney, III, Pro Hac Vice, James C. Haggerty, Pro
Hac Vice, for the Defendant.

ORDER
WITHAM, J.
*1 1. Defendant, Nationwide Mutual Insurance
Company ("Nationwide" or "defendant"), seeks
reconsideration of Commissioner Freud's ("
Commissioner") order granting Plaintiff, James M.
Crowhorn's ("Crowhorn" or "plaintiff") motion to
compel production of certain training documents
referred to as "the training materials".

2. Nationwide contends that "the training materials"
have nothing to do with either the issues relevant to
class certification nor merit discovery pertaining
solely and only to the named plaintiff.

3. Further, the sole basis for the motion before the
Commissioner was that counsel for the defendant
allegedly promised to produce the documents.
Nationwide contends that no such promise was
made.

4. Plaintiff asks that this Court uphold the
Commissioner's May 9, 2002 Order and further
states that the requested documents are
independently relevant to both class certification
and to plaintiff's punitive damage claims.

5. Plaintiff also claims that the Commissioner did
determine that a promise had been made, and
broken, thereby giving a basis for the sanctions
ordered.

6. The Commissioner, having heard the arguments
at the hearing on May 9, 2002, determined at page
30 of the Hearing Transcript that:
"I have reviewed both the motion papers from the
plaintiff and the defense in this matter, and after
consideration of the arguments presented here
today, it is my opinion that the matters requested by
Mr. Crowhorn are relevant or are designed to find
relevant information in this action on either the
merits and/or the class certification and, therefore, I
am going to grant Mr. Crowhorn's motion.

Now, therefore, after careful reconsideration of the
Commissioner's May 9, 2002 Order, and for the
reasons set forth in the Commissioner's order, I find
that the order will be upheld in all respects. The
discovery requested shall be made within five (5)
days of this Order and the sanctions paid within that
same time frame.

IT IS SO ORDERED.

Del.Super.,2002.
Crowhorn v. Nationwide Mut. Ins. Co.
Not Reported in A.2d, 2002 WL 31478806
(Del.Super.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 2002 WL 31478806 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: SEP 07,2007

### KEYCITE

**H**Crowhorn v. Nationwide Mut. Ins. Co., 2002 WL 31478806 (Del.Super., Sep 24, 2002) (NO. CIV.A. 00C-06-010 WL)

### History
### Direct History

=>     1  **Crowhorn v. Nationwide Mut. Ins. Co.,** 2002 WL 31478806 (Del.Super. Sep 24, 2002) (NO. CIV.A. 00C-06-010 WL)

### Related References (U.S.A.)

**H**     2  Crowhorn v. Nationwide Mut. Ins. Co., 2001 WL 695542 (Del.Super. Apr 26, 2001) (NO. CIV. A00C-06-010 WLW)
            *Reargument Denied by*
**H**     3  Crowhorn v. Nationwide Mut. Ins. Co., 2001 WL 789649 (Del.Super. Jun 13, 2001) (NO. CIV.A.00C-06-010WLW)

**H**     4  Crowhorn v. Nationwide Mut. Ins. Co., 2002 WL 388115 (Del.Super. Feb 28, 2002) (NO. CIV. A. 00C-06-010)
**H**     5  Crowhorn v. Nationwide Mut. Ins. Co., 2002 WL 991033 (Del.Super. May 01, 2002) (NO. C.A. 00C-06-010)
**H**     6  Crowhorn v. Nationwide Mut. Ins. Co., 2002 WL 1274052 (Del.Super. May 06, 2002) (NO. 00C-06-010 WLW)
**H**     7  Crowhorn v. Nationwide Mut. Ins. Co., 797 A.2d 26 (Del.Supr. May 23, 2002) (TABLE, TEXT IN WESTLAW, NO. 246, 2002)

**H**     8  Crowhorn v. Nationwide Mut. Ins. Co., 2002 WL 1767529 (Del.Super. Jul 10, 2002) (NO. CIV.A. 00C-06-010WLW)
            *Appeal Refused by*
**H**     9  Crowhorn v. Nationwide Mut. Ins. Co., 804 A.2d 1065 (Del.Supr. Aug 14, 2002) (TABLE, TEXT IN WESTLAW, NO. 450,2002)

**H**    10  Crowhorn v. Nationwide Mut. Ins. Co., 2002 WL 31484803 (Del.Super. Sep 03, 2002) (NO. CIV.A. 00C-06-010WLW)

**H**    11  Crowhorn v. Nationwide Mut. Ins. Co., 2002 WL 31484804 (Del.Super. Sep 03, 2002) (NO. CIV.A. 00C-06-010WLW)
            *Appeal Refused by*
**H**    12  Crowhorn v. Nationwide Mut. Ins. Co., 807 A.2d 578 (Del.Supr. Oct 18, 2002) (TABLE, TEXT IN WESTLAW, NO. 530, 2002)

© Copyright 2007 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

**H**    13  Crowhorn v. Nationwide Mut. Ins. Co., 836 A.2d 558 (Del.Super. Nov 06, 2003) (NO.
           CIV.A.00C06010WLW)

© Copyright 2007 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64
058 914 668, or their Licensors. All rights reserved.

# EXHIBIT G

Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 1996 WL 944919 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

C
Kemper Ins. v. Soligo
Del.Super.,1996.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
KEMPER INSURANCE
v.
Elizabeth SOLIGO
No. 95C-08-266-WTQ.

May 9, 1996.

*RE: Letter Opinion and Order on Plaintiff's Motion
to Compel MOTION DENIED*
QUILLEN, J.

Dear Counsel:

*1 Confirming our conversation at the status
conference on May 7, 1996, the Court appreciates
the fact that counsel are going to stipulate to
binding arbitration in this matter. The Court
apologizes again for not responding more promptly
to the Motion to Compel and hopefully the length of
this letter will explain the further delay since the
status conference. There were two matters
preliminary to arbitration that were raised at the
status conference.

First, the Court directed the defendant to produce
the entire claims manual that was in dispute. IT IS
SO ORDERED.

Second, there was the matter of the *in camera*
review which resulted from the Motion to Compel.
The Court has now reviewed the unedited "focus
system" log notes which were produced to the Court
with Mr. Finchler's letter of March 29, 1996 and
*Tackett v. State Farm Fire and Casualty Insurance
Co.*, Del.Super., 653 A.2d 254 (1995).

While the Supreme Court said that "[a] party cannot
force an insurer to waive the protections of the
attorney-client privilege merely by bringing a bad
faith claim" [*Tackett*, 653 A.2d at 259] and "
[b]ecause of the presumptive confidentiality of
[opinion work product], ... disclosure is not to be
routinely granted in bad faith cases" [*Tackett*, 653
A.2d at 263], the opinion is difficult to read
narrowly and certainly difficult to apply in the trial
arena where discovery matters arise with the
expectation of prompt decision on a routine motion
day. Unfortunately, the law we Judges write seldom
simplifies the already complex process of litigation,
and frequently adds layer after layer of expensive
side issue litigation. *See* Chancellor Brown's
wonderful opinion in *Kaplan v. Wyatt*, Del. Ch.,
484 A.2d 501, 509-12 (1984), wherein he skillfully
sets forth the practical implications of *Zapata Corp.
v. Maldonado*, Del.Super., 430 A.2d 779 (1981).
The history of the attorney-client privilege and the
work product privilege, which are slowly becoming
remnants of their former selves, is not dissimilar.

Count III of the complaint alleges bad faith in
processing the plaintiff's PIP claim. The defendant's
answer asserts "reasonable justification" which
defendant says is based "on the opinions stated by a
medical expert." The response further notes that the
defendant "did not make any factual assertions in
the defense of its position which incorporate the
advice and judgment of counsel." True, but:

1. In normal course, counsel is a player and
especially so when there is reliance on an IME; and

2. How can the plaintiff test the response without
access to the file?

Moreover, suppose in an extreme case counsel had
advised the IME could not be relied upon.

It certainly strikes me as artificial to deny discovery
based on what the defendant chooses not to say
when he gives his purported reasonable

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                      Page 2

**Not Reported in A.2d, 1996 WL 944919 (Del.Super.)**
**(Cite as: Not Reported in A.2d)**

justification. When does an insurer, involved as a defendant in a bad faith case, make "factual assertions in defense of a claim" which do not " incorporate, expressly or implicitly, the advice and judgment of its counsel"? *Tackett,* 653 A.2d at 259. In *Tackett* itself, the Court said the defense asserted by the insurer did "not directly relate to any protected communications." *Tackett,* 653 A.2d at 259. Yet, discovery was allowed based on the attorney's implicit role in routine handling while creation of a rule of *per se* waiver of the attorney-client privilege in bad faith was expressly denied. In this case, the insurer is expressly not asserting the advice of an attorney as reasonable justification and presumably would be barred from so doing later. In one sense, and speaking nonjudgmentally, the insurer is purposefully not telling the whole truth in order to protect the attorney-client privilege from waiver. I suppose that is an option frequently exercised. There clearly has not been a voluntary and intentional waiver of the privilege. But obviously, the issue of implicit waiver based on a fairness doctrine [*Tackett,* 653 A.2d at 259] is a somewhat broader one. Since the defendant has voluntarily disclosed these particular log notes of attorney-client communications *in camera* to the Court, the Court can look at them directly and determine disclosure fairness in a precise context and frankly this Judge appreciates the *in camera* disclosure because he feels better acting in the precise context than ruling on implicit waiver in ignorance of the facts. Implicit waiver is problematic if judged in the generality of notice pleading.

**\*2** The same basic problem exists with work product of the insurer's agents. There is a prolonged delay in the processing of a claim in this case and the plaintiff cries foul. The plaintiff, it seems facially, is entitled to be heard on bad faith. Given that situation, unless the insurer's assertion as to justification is to be blindly accepted, when are the mental impressions of the insurer's agents not at least a "pivotal issue" [*Tackett,* 653 A.2d at 262-63] in such a bad faith claim? When is there not a " substantial need" for the information and the likelihood that the information is not "available elsewhere?" Surely there is a "factual basis to support a good faith belief by a reasonable person

that *in camera* review of the materials may reveal evidence to establish the claim." *Tackett,* 653 A.2d at 263.

The only answer to these dilemmas seems to me to lie in the *in camera* examination by the Court. As a Judge, I do not like that answer. In effect, we are asking a Judge who has not been exposed to the entire case in a motion context on limited paperwork to make the decision of an advocate on the merits of value of the material. The Judge performing that function does not know the thought process of the plaintiff's counsel and may be of a temperament totally unsuited for an advocate, either generally or specifically in bad faith cases. But, if there is going to be any meaningful preservation of the privileges, the ball realistically ends up in the Judge's court and we might as well face that fact head on in the first instance and make a judgment after viewing the material. Thus, while I do not relish the role, I have appreciated the way counsel have presented the issue in this case.

I have reviewed the redacted materials and, as a matter of discretion, I decline to require production under the compelling need standard. The facts in this case are less pointed than in *Tackett* and, despite my concerns as to the necessary effect of that decision, *Tackett* expressly does not automatically eliminate the privileges. To generalize reasons for my ruling for the benefit of counsel, the redacted material involving work product contains no smoking gun and, in *my* opinion, does not reveal information that a reasonable person acting in good faith would believe to be evidence establishing the plaintiff's claim. Fairness also does not require disclosure of any attorney-client communications contained in the material. In *my* opinion, the file reveals nothing other than normal business and lawyer practices. I am returning to Mr. Redfearn the unedited "focus system" log notes.

The Motion to Compel is DENIED. IT IS SO ORDERED.

Del.Super.,1996.
Kemper Ins. v. Soligo
Not Reported in A.2d, 1996 WL 944919

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1996 WL 944919 (Del.Super.)
**(Cite as: Not Reported in A.2d)**


(Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: SEP 07,2007

### KEYCITE

**C Kemper Ins. v. Soligo, 1996 WL 944919 (Del.Super., May 09, 1996) (NO. 95C-08-266-WTQ)**

**History**

=>        1  **Kemper Ins. v. Soligo, 1996 WL 944919 (Del.Super. May 09, 1996) (NO. 95C-08-266-WTQ)**

© Copyright 2007 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64
058 914 668, or their Licensors. All rights reserved.