IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLEMAN DUPONT HOMSEY and ELLEN HOMSEY, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 07-338-JJF |
| v. | ) ) ) | |
| VIGILANT INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | | |

**APPENDIX TO
VIGILANT INSURANCE COMPANY'S ANSWERING BRIEF IN OPPOSITION
TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN
SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

EDWARDS ANGELL PALMER & DODGE LLP
Denise Seastone Kraft (#2778)
919 North Market Street, Suite 1500
Wilmington, DE 19801
(302) 777-7770
*Attorneys for Defendant
Vigilant Insurance Company*

December 19, 2007

## INDEX

| Case | Tab |
|---|---|
| E. I. du Pont de Nemours & Co. v. Admiral Ins. Co., No. 89C-AU-99, 1996 WL 190764 (Del.Super. April 9, 1996) | 1 |
| Shreckengast v. State Farm Fire & Cas. Co. No. 97C-06-015, 1998 WL 731566 (Del.Super. May 18, 1998) | 2 |

1

Case 1:07-cv-00338-JJF   Document 40   Filed 12/19/2007   Page 3 of 13



Not Reported in A.2d
Not Reported in A.2d, 1996 WL 190764 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 1

H
E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.
Del.Super.,1996.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
   Superior Court of Delaware, New Castle County.
   E.I. DU PONT DE NEMOURS & COMPANY, a
   Corporation of the State of Delaware, Plaintiff,
              v.
   ADMIRAL INSURANCE COMPANY, et al.,
              Defendants.
          C.A. No. 89C-AU-99.

        Submitted: April 20, 1995.
        Decided: April 9, 1996.


Certain Defendants' Motion for Partial Summary Judgment on the Number of Occurrences.

Charles S. Crompton, Jr. and Richard L. Horwitz of Potter Anderson and Corroon, Wilmington, and Richard Allen Paul and Erin Kelly of E. I. du Pont de Nemours & Company; (Peter J. Kalis, Michael J. Lynch and Carolyn M. Branthoover of Kirkpatrick & Lockhart, Pittsburgh, Pennsylvania, of counsel), for Plaintiff E. I. du Pont de Nemours & Company.
Laurence V. Cronin of Smith, Katzenstein & Furlow, Wilmington, Defense Coordinator.
Donald L. Gouge, Jr. of Heiman, Aber & Goldlust, Wilmington (James E. Rocap, III, Stephen L. Braga and Cynthia Thomas Calvert of Miller, Cassidy, Larroca & Lewin, Washington, D.C.; Roy L. Reardon, Robert F. Cusumano of Simpson, Thacher & Bartlett, New York City, of counsel), for Certain Defendants.

                OPINION
STEELE, Vice-Chancellor.
*1 Defendants Admiral Insurance Company, et. al.[FN1] ("Certain Defendants") filed a motion for partial summary judgment on the number of occurrences as defined in various insurance policies issued to E.I. duPont de Nemours and Company ("DuPont"). DuPont has filed a cross-motion for partial summary judgment on the same issue. The issue before the Court is a narrow one. The parties suggest the Court can determine whether the property damage at the Niagara Falls Plant (the "Niagara plant") and the damage at the Necco Park Landfill ("Necco") resulted from a single occurrence or from multiple occurrences. Each party suggests the Court can then grant summary judgment and remove the issue from the triers of fact. That determination must be based upon the insurance policy language, "all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence."

    FN1. The Parties will submit and the Court will sign an agreed form of Order prepared by Coordinating Counsel which will identify the parties to these motions.

The significance of the number of occurrences determination relates, of course, to the extent of the insurers' liability. Each policy contains a "per occurrence" limit of liability, which provides the insurer's obligation to the insured is limited to a specified dollar amount for each separate occurrence. DuPont suggests, given the monetarily extensive damages at the various sites, grouping different sites under a single occurrence could significantly reduce DuPont's potential recovery. The Court does not focus on the parties' respective economic dilemmas posed by post contracting consequences but upon interpretation of the contracts as written. As this Opinion will attempt to explain, I find summary judgment inappropriate on the issues presented.


                 FACTS

The parties claim they do not contest the facts material to this issue. Environmental damage occurred at the Niagara plant and at Necco due to the migration of various industrial wastes stored at those sites. The sites are located less than two miles from each other. The Niagara plant produced the industrial wastes at both sites. They were then distributed to distinct areas for disposal.

Not Reported in A.2d
Not Reported in A.2d, 1996 WL 190764 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 2

The primary policy language at issue is known as the "deemer" clause. For the years 1967 through 1971, that clause read, "all personal injury or property damage arising out of continuous or repeated exposure to substantially the same general conditions existing at or emanating from one location or source ... shall be considered as arising out of one occurrence." The applicable policies from 1971 to 1986 read, "[an] 'occurrence' ... shall mean ... a continuous or repeated exposure to conditions .... All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence." The significance of the "deemer" clause is that a coverage cap is listed in each policy limiting the amount of coverage the insured could receive per occurrence. Hence, since the damages at Niagara and Necco exceed the coverage limit, the insurers' liability differs significantly based upon whether that damage is due to a single occurrence or multiple occurrences.

LEGAL STANDARD

*2 A motion for summary judgment requires the Court to examine the record to determine whether any genuine issues of material fact exist. _Burkhart v. Davies, Del. Supr., 602 A.2d 56, 59 (1991), cert. denied,_ 504 U.S. 912 (1992). The Court will consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits when making its determination. Super. Ct. Civ. R. 56(c). After viewing the record in the light most favorable to the nonmoving party, if the Court finds no genuine issue of material fact, summary judgment is appropriate. _Hammond v. Colt Indus. Operating Corp., Del. Super., 565 A.2d 558, 560 (1989)._ When faced with cross motions for summary judgment, no party's motion will be granted unless no issue of material fact exists or if a dispute exists regarding the inferences which may be drawn from the facts. _Empire of Am. Relocation Servs., Inc., v. Commercial Credit Co., Del. Supr., 551 A.2d 433, 435 (1988)._

DISCUSSION

It is not disputed the contaminants that escaped containment at Necco and created the property damage at that site were produced at Niagara. In fact, from 1932-1977, the Necco Park landfill served as an immense receptacle for waste products from the Niagara plant. _See_ Plaintiff's Memorandum at 8 (agreeing with defendant's description of Necco). No party disputes the fact Necco and Niagara were situated in two distinct geographical locales. Hence, the Court must decide to what the "premises location" refers: the individual site or the original source of the chemical waste. That is, are the "general conditions" out of which the property damage arose the interaction of the chemical waste at the specific site, or the creation and disposal of the waste from the plant.

DuPont would have this Court conclude because Necco and Niagara are separate locations and it exposed different contaminants to the groundwater at each separate site, the contamination arose from two separate occurrences. Alternatively, Certain Defendants argue the irrelevance of the geographic location and point instead to the Niagara plant as the source of the contaminants, the distribution of which ultimately resulted in the property damage. I find the position of neither party compelling.

As defendants note in their Reply Memorandum, DuPont's position distinguishing Necco Park from the Niagara plant site contrasts with DuPont's stated position regarding the Pompton Lakes area and even the various regions around the Niagara Plant. _See_ Certain Defendants' Reply Memorandum at 8-13. Defendants set out in some detail numerous examples of how, at both the Pompton and Niagara plants, different types of contaminants were placed in different locations around those plants for disposal, consequently contaminating distinct areas. _Id.; see also_ DuPont Opposition Memorandum at 6 (damage to the environment surrounding the Niagara Plant consists of contamination of the groundwater, certain soils, and Gill Creek). Yet, DuPont does not claim separate occurrences at Niagara or Pompton for each region of distinct contaminants, location, and damage.

*3 Generally, an occurrence is determined by the cause or causes of the resulting injury. _Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982)._ The commonly accepted test is whether there is one proximate, uninterrupted, and continuing cause which resulted in all of the damage. _Id.; Bartholomew v. Insurance Co. of N. Am., 502 F. Supp. 246 (D.R.I. 1980), aff'd sub nom. Bartholomew v. Appalachian Ins. Co., 655 F.2d 27 (1981); Air Prods. & Chems. v. Hartford Acc. & Indem. Co., 707 F. Supp. 762, 773 (E.D. Pa. 1989)._ In applying this "cause" analysis, courts have held "where a single event, process or condition results in injuries, it will be deemed a single occurrence even though the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1996 WL 190764 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 3

injuries may be widespread in both time and place and may affect a multitude of individuals."*Transport Ins. Co. v. Lee Way Motor Freight, Inc.*, 487 F. Supp. 1325, 1330 (N.D. Tex. 1980); *see generally* C. T. Drechsler, *What Constitutes "each," "a single," "one," "any one," "any," or "an" Accident or Occurrence, Within Liability Policy Limiting Insurer's Liability to Specified Amount*, 55 A.L.R.2d 1300 (1957).

Whether the damage resulted from the disposal of cyanide residue solids east of Building 301 or of copper sludge at the southern boundary of the plant, or the burial of any such Niagara plant contaminants at Necco, the creation of those contaminants caused the damage at Niagara and the need for their subsequent disposal. *See* Certain Defendants' Exhibit 3 at III-53 - III-55. Just as at Pompton, the damage-producing contaminants emanated from the plant at Niagara. Consequently, a single plant's waste creates a single occurrence. Arguably, however, on the facts of this case where that waste was stored and the specifics of that waste's damage-causing migration vary. The initial cause of the environmental damage at both the Niagara plant and at Necco was the production of industrial waste by the Niagara plant followed by the disposal of that waste at those on- and off-plant locations.

DuPont criticizes defendants' arguments in which product liability cases are cited. In *Uniroyal, Inc. v. Home Ins. Co.*, 707 F. Supp. 1368 (E.D.N.Y. 1988), the court dealt with a manufacturer of Agent Orange claiming coverage for its product liability. *Id* at 1369. The court faced policy language much like the present language in determining the number of occurrences. *Id* at 1371-72. That court focused on the manufacture and deliveries by Uniroyal of the product as constituting a single occurrence rather than the various instances of actual spraying and the consequent injuries as a number of separate occurrences. *Id* at 1383. "Finding a single occurrence is especially apt in cases ... of mass deliveries of hazardous products ultimately imposing damage on large numbers of people." *Uniroyal*, 707 F.Supp. at 1384. The conclusion is clear in the case of mass disposal of hazardous products ultimately imposing damage at a large number of locations. In determining the number of occurrences, the proper focus in a products liability case is on production and dispersal -- not on the location of injury or the specific means by which injury occurred.

*4 While DuPont is critical of Certain Defendants' lack of reference to any environmental cases concerning the number of occurrences, DuPont cites *McCoy v. Draine*, Del. Super., C.A. No. 87C-AU-18A, Graves, J. (Feb. 1, 1991) (Opinion), and *Ennis v. Reed*, Del. Super., 467 C.A. 1977, Taylor, J. (April 4, 1978) (Letter Opinion) as the pertinent case law. Those cases concern auto accidents and are inapposite and unpersuasive. The issue facing those judges regarding the number of occurrences was essentially whether the liable driver was able to regain control of his vehicle between multiple accidents. *McCoy, supra; Ennis, supra*. The car accident context is substantially different from the type of injurious process created by manufacture and dispersal of products. *See Uniroyal*, 707 F. Supp. at 1386. With car accidents, the damage-causing agent is not produced at one place and distributed to a number of locations where damage then occurs. The occurrence (impact) is a distinct, discreet event. Any analogy to the industrial waste situation would be strained at best.

DuPont also makes a number of arguments which urge this Court to find against Certain Defendants due simply to their status as insurers. DuPont claims the courts in the product liability cases finding one occurrence with a number of injuries made those findings to prevent insurers from escaping coverage obligations.[FN2] Further, DuPont argues the propriety of the *contra proferentum* doctrine for ruling against the insurers.

> FN2. DuPont cites the following cases supporting this position: *Stonewall Ins. Co. v. National Gypsum Co.*, S.D.N.Y., No. 86 Civ. 9671, Martin, J. (May 27, 1992) (Memorandum Opinion and Order); *Champion Int'l Corp. v. Continental Casualty Co.*, 546 F.2d 502 (2d Cir. 1976); *Uniroyal*, 707 F.Supp. at 1386; *Owens-Illinois, Inc. v. Aetna Casualty & Sur. Co.*, 597 F. Supp. 1515 (D.D.C. 1984).

First, in as much as *Uniroyal* and other such cases were decided based on a policy to apply insurance coverage as broadly as possible, I find it difficult to conclude they constituted attempts to allow insurers to escape their contractual obligations for some unstated perverse policy reason. The holdings as they relate to the number of occurrences based on the manufacturing source are the persuasive aspects of those cases. No court can find coverage where a policy clearly and unambiguously precludes it.

Second, the *contra proferentum* doctrine is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1996 WL 190764 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 4

inapplicable. Different policies contained slightly different language regarding determination of the number of occurrences, however, I do not find the language at issue ambiguous. In fact, the debate between the parties is not over the meaning of a certain term or terms, but over which location the "single premises location" language applied, i.e. what was the *cause* of the damage. Disagreement over the proper construction of a contract does not render it ambiguous. *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, Del. Supr., 616 A.2d 1192, 1196 (1992).

There is no ambiguity to construe against a drafter even if, as a matter of fact, the insurers could be considered "the drafter" under the well established meaning of the term for the purpose of a "*contra proferentum*" analysis. *E.I. duPont de Nemours and Co. v. Shell Oil Co.*, Del. Supr., 498 A.2d 1108, 1114 (1985).

*5 The real issues here are ones of material fact and they prevent granting Certain Defendants' Motion for Partial Summary Judgment on the Number of Occurrences or granting DuPont's cross Motion for Partial Summary Judgment on the Number of Occurrences.

The Niagara Plant and the Necco Park landfill are two separate premises locations. The existing record does not clearly delineate whether damage resulted from separate, uninterrupted conditions at the landfill clearly distinguishable from the events at the plant which created the environmental wastes in the first instance. The trier of fact must determine whether there was "exposure to substantially the same general conditions existing at or emanating from one premises." A trial judge's best intentions and attempts to resolve factual issues at summary judgment in order to avoid an inefficient and time consuming trial are taken at substantial risk. *See generally Hoechst Celanese Corp., et. al., v. Certain Underwriters, et. al.*, Del. Supr., No. 329, 1994 (March 27, 1996) (Opinion). While the parties here do not dispute the material factual bases for a summary conclusion, the differing inferences they would have the Court draw preclude summary judgment. In short, the trier of fact will be called upon to determine what specific act when and where caused damages triggering the policies effected.

The parties' coordinating counsel will submit an order approved as to form including the affected parties in accordance with this opinion.

IT IS SO ORDERED.

Del.Super.,1996.
E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.
Not Reported in A.2d, 1996 WL 190764 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.





Not Reported in A.2d
Not Reported in A.2d, 1998 WL 731566 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 1



Shreckengast v. State Farm Fire & Cas. Co.
Del.Super.,1998.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
Craig A. SHRECKENGAST and Christine Shreckengast, Plaintiffs,
v.
STATE FARM FIRE & CASUALTY COMPANY, Defendant.
No. 97C-06-015 HDR.

May 18, 1998.

Upon Defendant's Motion for Summary Judgment Granted.

Susan L. Parker, Esq. and Kathleen M. Miller, Esq. of Smith, Katzenstein & Furlow, Wilmington, for Plaintiffs.
Robert K. Pearce, Esq. and Edward F. Kafader, Esq. of Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, for Defendant.

ORDER

RIDGELY, President J.
*1 This 18th day of May, 1998, upon consideration of the defendant's motion for summary judgment, counsels' briefs and the record in this case, it appears that:

(1) Plaintiffs Craig and Christine Shreckengast ("the Shreckengasts") seek a defense and indemnification [FN1] for two actions against them from their insurer, State Farm. At issue is a dispute over the interpretation of two policies, the Apartment Policy and the Homeowner's Policy. State Farm summarily denied coverage and has now moved for summary judgment regarding its lack of obligation to compensate for damages resulting from an accident.

FN1. Defense clause provides the insured with litigation insurance in the event a claim is filed against the insured. Indemnification clause provides the insured with insurance coverage for the actual claim.*Hoechst v. National Union,* Del.Super., C.A. No. 89C-SE-35, 1994 WL 721618, Gebelein, J. (Apr. 8, 1994).

(2) Central to the case at bar are two general liability policies which the Shreckengasts maintained with State Farm. The Apartment policy provided coverage for an apartment building which the Shreckengasts owned and solely used as rental property. At no time did the Shreckengasts reside there. The Apartment policy was effective from February 4, 1992 until February 4, 1994; however, the policy was prematurely terminated when the Shreckengasts sold the apartment building to Mr. & Mrs. Ellingsworth ("the Ellingsworths") on January 25, 1994. The Homeowner's policy provided coverage for their residence from June 1, 1994 until June 1, 1995.

The incident that triggered this action occurred on or about June 27, 1994.[FN2] A tree that was located, at least in part, on the property of the apartment building, fell during a wind storm and caused substantial damage to the adjacent property. This accident allegedly caused personal injuries and property damage to the business of Mr. and Mrs. Kesterson ("the Kestersons").

FN2. When the word "trigger" is used in insurance, it is a term of art which means the event that activates coverage under the policy.*Hoechst Celanese Corp. v. Certain Underwriters at Lloyd's London,* Del.Supr., 673 A.2d 164, 166 n. 2 (1996).

(3) As a result of the accident, two tort actions commenced against the Shreckengasts. First, Harford Mutual Insurance Co. ("Harford"), as subrogee of the Ellingsworths ("the Harford action"), claimed that the Shreckengasts breached their duty of care since they should have been aware of the dangerous condition of the tree. Second, the Kestersons personally sought to recover for personal injuries, medical expenses,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                        Page 2
Not Reported in A.2d, 1998 WL 731566 (Del.Super.)
(Cite as: Not Reported in A.2d)

lost income, and punitive damages ("the Kesterson action"). Consequently, the Shreckengasts sought a defense and indemnification from State Farm in both actions pursuant to the Apartment policy and the Homeowner's policy. However, State Farm denied coverage claiming that the damage occurred outside the effective dates of the Apartment policy, and that the Homeowner's policy specifically excluded coverage of injuries arising from business pursuits.

(4) In its motion for summary judgment, State Farm argues that it properly denied coverage to the Shreckengasts because the policies were unenforceable. First, State Farm argues that the "occurrence" which could have triggered the Apartment policy's application arose after the policy was terminated. According to the policy, coverage provided for an "occurrence which takes place during the policy period."[FN3] An "occurrence" is an "accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage."[FN4] State Farm argues that since the property damage or "destruction of tangible property" occurred after the Apartment policy expired, State Farm is not required to pay for the damages.

FN3. *See,* Apartment Policy, p. 20.

FN4. *Id.* at 32.

\*2 Next, State Farm contends that the Homeowner's Policy is inapplicable. While effective at the time of the accident, the Homeowner's policy did not provide coverage for the apartment building because the Shreckengasts never resided in it. State Farm further argues that even if the policy provided liability insurance for the apartment building, this damage would be excluded because the policy did not provide coverage for accidents arising out of a business pursuit and did not trigger any exceptions to that exclusion.

(5) The Shreckengasts answer that they are entitled to coverage as provided by both policies.[FN5] With regard to the Apartment Policy, the Shreckengasts argue that the policy was in effect at the time of the "occurrence" since the "occurrence" was a continuous, uninterrupted pattern of the deterioration of the tree which, ultimately, resulted in the injury when it fell. Therefore, since the "occurrence" or deterioration took place during the policy period, the insurer must defend their claim. The Shreckengasts also argue that while the Homeowner's Policy possesses a business exclusion to the coverage, the nature of the accident permits reliance upon the exception to that exclusion. Accordingly, the exception states that the business exclusion does not apply to activities which are ordinarily incident to non-business pursuits. Hence, the alleged deterioration of the tree does not relate to the renting of the properties and, therefore, invokes the exception which permits coverage.

FN5. They also assert that they have a per se right to defense for the "Harford" and "Kesterson" actions since the insurer's duty to defend is broader than its duty to indemnify. *See, Continental Insurance Co. v. Burr,* Del.Supr., 706 A.2d 499, 501 (1998).

(6) Summary judgment is appropriate if, after viewing the record in the light most favorable to the non-moving party, the court finds no genuine issue of material fact.[FN6] However, if from the evidence produced, there is a reasonable indication that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law, summary judgment will not be granted.[FN7] When the facts permit a reasonable person to draw but one inference, the question becomes one for decision on summary judgment.[FN8] If an examination of the record reveals no genuine issue as to material facts, it is incumbent upon the court to grant summary judgment.[FN9] If the basic facts are not in dispute and point to only one justifiable conclusion, summary judgment is appropriate.[FN10]

FN6. *Guy v. Judicial Nominating Comm'n,* Del.Super., 659 A.2d 777, 780 (1995); *Figgs v. Bellevue Holding Co.,* Del.Super., 652 A.2d 1084, 1087 (1994).

FN7. *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467, 470 (1962), *rev'd in part and aff'd. in part,* 208 A.2d 495 (1965).

FN8. *Frelick v. Homeopathic Hosp. Ass'n,* Del.Super., 150 A.2d 17 (1959); *Wotten v. Kiger,* Del.Supr., 226 A.2d 238 (1967).

FN9. *E.K. Geyser Co. v. Blue Rock Shopping Ctr., Inc.,* Del.Super., 229 A.2d 499 (1967).

FN10. *489.137 Square Feet of Land v. State*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 3
Not Reported in A.2d, 1998 WL 731566 (Del.Super.)
(Cite as: Not Reported in A.2d)

*ex rel. Price,* Del.Supr., 259 A.2d 378 (1969).

(7) The arguments pertaining to each policy will be addressed in turn. Regarding the Apartment Policy, the issue turns on whether the triggering "occurrence" is the deterioration of the tree's roots or the falling of the tree. In Delaware, an "occurrence," with regard to an insurance policy, is determined by the cause or causes of the resulting injury. The accepted test is whether there is one proximate, uninterrupted, and continuing cause which resulted in the damage.[FN11] In applying this "cause" analysis, this Court has held that where a single event, process or condition results in injuries, it will be deemed a single "occurrence" even though the injuries may be widespread in both time and place and may affect a multitude of individuals.[FN12]

FN11. *Du Pont v. Admiral Ins.,* Del.Super., C.A. No. 89C-AU-99, 1996 WL 190764 at *3, Steele, J. (Apr. 9, 1996).

FN12. *Id.*

*3 In *DuPont,* the Court determined an "occurrence" within the context of industrial pollution. In that case, the pollutants were produced at one location and dumped at another where the property damage took place. The Court held that "in determining the number of occurrences, the proper focus in a products liability case is on production and dispersal, not on the location of injury or the specific means by which injury occurred."[FN13] Applying *DuPont's* rationale, the Shreckengasts argue that this Court should focus on the "cause" (i.e. rotting of the roots) to determine the "occurrence," not on the specific injury (i.e. the falling of the tree).

FN13. *Id.*

However, a product liability suit is sufficiently distinguishable from the case at bar. Even in *DuPont,* the Court differentiated causation in a product liability suit from that of other suits. For example, in a multiple car accident the "occurrence" is a distinct, discrete act. Similarly, in this instance, this Court finds that the distinct, discrete act is the falling of the tree that resulted in the compensatory damage.

(8) Since the "occurrence" is the falling of the tree, this Court must next address whether an insured may still recover after the policy has expired. Generally, an insured may not recover after the policy has expired.[FN14] Accordingly, the "occurrence" is not the time of the negligent act, but the time when the complaining party actually suffered damage.[FN15] "Therefore the important time factor, in determining insurance coverage where the basis of the claim is negligence, is the time when the damage has been suffered."[FN16] However, circumstances do arise when a complainant may recover after the expiration of the policy. This occurs when there is a delay between an injury and the damage. For example, if a claimant was exposed to asbestos, the triggering event would be the actual exposure to the injurious conditions, not the subsequent manifestation of the exposure.[FN17] Therefore, that claimant could employ the former policy covering the time period of the injurious conditions.

FN14. *Yarrington v. Maryland Casualty Co.,* N.J.Super., 138 N.J.Super. 398, 351 A.2d 353, 355 (1971).

FN15. *Id.*

FN16. *Id.*

FN17. *Mitchell v. Maryland Casualty Co.,* 324 Md. 44, 595 A.2d 469 (Md.1991).

In the case *sub judice,* no such delay existed between the time when the tree fell and the resulting property and personal damage. Therefore, the Shreckengasts cannot recover pursuant to the Apartment Policy because the triggering "occurrence" took place after the policy terminated.

(9) This Court will next address the issue of whether the Shreckengasts may recover pursuant to the Homeowner's Policy. I find that they cannot recover because the Homeowner's Policy did not encompass the apartment building.[FN18] When terms of a policy are clear, the Court should enforce the policy as written.[FN19] This policy distinctly provides coverage only for structures in which the Shreckengasts resided, on a permanent or temporary basis. As stipulated, the plaintiffs never resided or occupied any portion of the apartment building. Therefore, the issue of whether maintaining a tree relates to a business activity is moot.

FN18. The declaration page did not include the apartment building. Of import, the policy contains the following provisions:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1998 WL 731566 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 4

    p. 2: "insured location" means:
a) the residence premises;
b) the part of any other premises, other structures and grounds used by you as a residence.
p. 3: We cover:
a) the dwelling used principally as a private residence on the residence premises shown in the Declarations.
p. 4: Property not covered:
g) property regularly rented or held for rental to others by an insured.
h) property rented or held for rental to others away from the residence premises.

    FN19.*Hallowell v. State Farm Mut. Auto Ins. Co.,* Del.Supr., 443 A.2d 925, 926 (1992); *State Farm Fire and Cas. Co. v. Hackendorn,* Del.Super., 605 A.2d 3, 7 (1991); *Hudson v. State Farm Mut. Ins. Co.,* Del.Supr., 569 A.2d 1168 (1990).

*4 (10) Based upon the undisputed facts, I find as a matter of law that State Farm is not obligated to provide coverage for the accident under either policy.

NOW, THEREFORE, IT IS ORDERED that State Farm's Motion for Summary Judgment is *GRANTED*.

Del.Super.,1998.
Shreckengast v. State Farm Fire & Cas. Co.
Not Reported in A.2d, 1998 WL 731566 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Denise Seastone Kraft, hereby certify that on December 19, 2007, the attached **Appendix To Vigilant Insurance Company's Answering Brief in Opposition To Plaintiffs' Motion For Summary Judgment And In Support Of Defendant's Cross-Motion For Summary Judgment** was served on the following persons in the manner indicated and was electronically filed with the Clerk of the Court using CM/ECF:

### BY TELECOPY & FIRST-CLASS MAIL

John Sheehan Spadaro, Esq.
John Sheehan Spadaro, LLC
724 Yorklyn Road
Suite 375
Hockessin, DE 19707
(302) 235-2536 (Telecopy)

/s/ Denise Seastone Kraft
Denise Seastone Kraft (#2778)
EDWARDS ANGELL PALMER & DODGE LLP
Wilmington, DE 19801
(302) 777-7770
dkraft@eapdlaw.com